TREMONT AND SUFFOLK MILLS *vs.* CITY OF LOWELL.

Middlesex.    January 18, 21, 1895. — March 2, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Valuation of Mill Property for Purposes of Taxation.*

In valuing the real property of a manufacturing corporation for taxation, when the land must be valued exclusively of the buildings and the buildings exclusively of the land, it is erroneous to value the land as if the buildings were removed from it and then to value the buildings as if they were to remain upon it, if the sum of the values thus obtained is greater than the fair cash value of the land and buildings taken together in the condition they were in at the time to which the valuation relates.

FIELD, C. J.    The petitioner, a manufacturing corporation organized under the laws of this Commonwealth and owning and occupying mills in the city of Lowell, appealed, pursuant to St. 1890, c. 127, to the Superior Court for the purpose of obtaining an abatement of the taxes assessed upon its land, buildings,

and machinery in said city. The statutes require that the assessors shall enter the valuation and assessment of estates on the books furnished in accordance with the provisions of Pub. Sts. c. 11, § 53, in the following manner: "In column Number Seven, The true value of machinery used in all kinds of manufacturing establishments," etc.; "In column Number Fifteen, The true value of buildings, . . . including water wheels; such value to be exclusive of land and water power and of the machinery used in said buildings"; and "In columns Number Sixteen, Seventeen, and Eighteen, A description by name or otherwise of each and every lot of land assessed, . . . and the true value thereof." The assessors are required to put down "The value of real estate, specifying the value of buildings exclusive of land, and of land exclusive of buildings." Pub. Sts. c. 11, §§ 13, 20, cl. 2, 50–54. St. 1886, c. 56. St. 1887, c. 86. By Pub. Sts. c. 11, § 45, the assessors are required to "make a fair cash valuation of all the estate, real and personal, subject to taxation therein." Under Pub. Sts. c. 11, § 69, a person is entitled to an abatement of his taxes "if he makes it appear that he is taxed at more than his just proportion, or upon an assessment of any of his property above its fair cash value." By St. 1885, c. 355, assessors are to be punished if they knowingly fix the valuation of any property at less or more than "its full and fair cash value."

The principal question in the exceptions in this case is, What is the standard or test whereby the fair cash value of land and of buildings affixed to land is to be determined when the valuation of the land is to be made exclusively of the buildings and the valuation of the buildings is to be made exclusively of the land. The dominant intention expressed in the statutes is, that every person shall be taxed upon a valuation of all his real property in the Commonwealth at the fair cash value of it in the condition it is in at the time as of which the valuation is made. *Lowell* v. *County Commissioners*, 152 Mass. 372, 384. Gen. Sts. c. 11, § 34, required that the list of the valuation and assessment of estates shall contain in separate columns certain particulars, among which are the description of the real estate, the true value of it, and the taxes assessed upon it, but a separate valuation of the land and of the buildings was not required.

St. 1861, c. 167, first required a valuation of the buildings to be made exclusively of the land.   The act is entitled " An Act to secure a uniform description and appraisal of estates in the Commonwealth for the purposes of taxation," and it required the Secretary of the Commonwealth to furnish blank-books containing certain specified columns and tables to the cities and towns for the use of the assessors.   The assessors were required to fill up the table of aggregates, and to deposit an attested copy of it in the office of the Secretary " on or before the first day of October in each of the first four years of each decade," and to make similar returns " in the first four years of the last half of each decade," and to deposit " in every fifth and tenth year of each decade " in said office " before the first day of October a certified copy under oath of the assessors' books for those years."   § 3.   See Pub. Sts. c. 11, §§ 53, 55, 57.   One purpose of these requirements was undoubtedly to obtain statistics of the kind and value of the property in the Commonwealth, and another was to establish uniformity in the proceedings of the assessors; see Pub. Sts. c. 11, §§ 96, 97 ; but there is no indication anywhere that there was any intention of valuing the property of any inhabitant at more or less than its full and fair cash value.   Pub. Sts. c. 11, § 59.

The Constitution requires the assessment to be proportional and reasonable, and that, in order that " such assessments may be made with equality, there shall be a valuation of estates within the Commonwealth taken anew once in every ten years at least, and as much oftener as the General Court shall order."   Const. Mass. c. 1, § 1, art. 4.   Equality in the assessment can be attained only by a valuation of all the property taxed according to the same standard of value, and the standard which has been adopted is the full and fair cash value of the property.   This value is necessarily to be estimated with reference to any and all the uses to which the property is adapted in the hands of any owner. It often happens that a lot of land with old buildings upon it is worth as much, or nearly as much, without the buildings as with them ; that the most profitable use the land can be put to is to remove the old buildings and build new ones ;  and that in order to do this the old buildings must be torn down at an expense nearly equal to or more than the value of the materials of the

buildings. Considered as a whole, the buildings add little or nothing to the value of the land. For certain purposes the buildings have value; they have an insurable value, but a building is insured on the assumption that it will not be removed from the land on which it stands. But the buildings, for the purposes of taxation as real estate, are in legal contemplation a part of the land. *McGee* v. *Salem,* 149 Mass. 238. Separated from the land, the buildings may have little or no value; if allowed to remain on the land, they may have great value, and as the value of the land and buildings for the purposes of taxation must be estimated with reference to all practicable uses to which they may be put by the owner or by any person who may become the owner, it often must be necessary to determine whether the best or most profitable use of the whole property is to remove the buildings or to permit them to remain.

The exceptions recite as follows: " At the close of the evidence the respondent contended and asked the court to rule, as matter of law, that in fixing the value of the petitioner's real estate inside its mill yards, the proper method was to estimate and fix the value of the land considered separately and independently of all the buildings and other structures thereon, and as though said buildings and structures were in fact severed and removed from the land, and independently of the particular uses to which said land was devoted, but having regard to its location, area, actual physical formation, availability for general building purposes, and to its water power appurtenances, and then to add to such value so determined the value of the buildings and other mill structures thereon, estimated and determined with reference to their age, adaptability to the purposes for which they were designed, and their actual condition as of May 1st, 1889."

The contention of the respondent in effect is, as we understand it, that, since the land must be valued exclusively of the buildings, the land must be valued as if the buildings were removed from it, even although this value should amount to the whole value of the land and buildings taken together, and that the buildings must be valued, not as buildings to be immediately removed from the land, in which case they might be worth little or nothing, but as buildings which might remain on the land, and with reference to the uses which might be made of them if

they remained. If the best or most profitable use the land can be put to is to tear down the buildings and build new ones, and if the value of the land is estimated with reference to this use, — and if the best use the buildings can be put to is to permit them to remain on the land and be occupied or let, and if the value of the buildings is to be estimated with reference to this use, — the result would be that the land and buildings are valued with reference to uses which are inconsistent with each other, and the total valuation would be greater than the fair cash value of the whole property, or than the price at which it could be sold, if sold at a fair price, whether the land and buildings were sold separately or together. The buildings cannot at the same time be removed from the land and remain on the land. It cannot be that any such result was intended by the statutes. Whatever may have been the purpose of requiring the component parts of any parcel of real estate to be valued separately, we think that it was not the intention to value any such real estate, considered as a whole, at more or less than the full and fair cash value of it in the condition it was in at the time to which the valuation relates.

What the principles are on which the fair cash value of the whole parcel should be divided between the land and the buildings, and what should be regarded as belonging exclusively to the land and what to the buildings, may present in many cases questions of difficulty on which differences of opinion must exist. As buildings affixed to land can be taxed as real estate only in connection with the land, it usually makes no difference to the owners in the amount of their taxes how the division of value between the land and the buildings is made. It may be suggested that, as the person taxed can appeal from the assessment on certain parcels of real estate without appealing from the assessment on other parcels, where the assessment is on separate parcels, the same rule should apply to the separate assessments on the land and on the buildings which constitute one parcel, and that when these are assessed separately the person taxed thus has his election to appeal from the assessment on the land or on the buildings, and may thus select the particular assessment which he thinks shows an overvaluation without including the other, and in this manner obtain an abatement of the taxes on the assessment selected, although the whole parcel, including land and buildings, has not been overvalued.

It has been decided that when different parcels of real estate belonging to the same owner are separately valued and assessed, and the owner applies for an abatement of the taxes assessed on certain specified parcels, but not on all, he can obtain an abatement if he proves that the assessments complained of were made upon an overvaluation of the specified parcels, although the other parcels were undervalued. The inquiry is not open whether the other parcels have been undervalued in order to make a set-off or defence against the assessments complained of. *Lowell* v. *County Commissioners*, 3 Allen, 546. *Lowell* v. *County Commissioners*, 146 Mass. 403. *Lowell* v. *County Commissioners*, 152 Mass. 372, 385. We are not aware, however, that it has ever been decided that a person can apply for an abatement of a tax assessed on land as distinguished from buildings, or on buildings as distinguished from land, when the land and buildings constitute one parcel of real estate, without including in the application the taxes assessed on the whole parcel, including the land and buildings. If this can be done, which we do not intimate, it would certainly enable the tax-payer to take advantage of the possibility that the appellate board or court might not make precisely the same division of the total value of the parcel between the land and the buildings as was made by the assessors, and thus in some instances obtain an abatement when the whole parcel has not been overvalued. In such a proceeding, if it could be maintained, it might be necessary to determine the principles on which the separate values should be ascertained. But no such question is involved in this case, which is an appeal for an abatement of the taxes assessed on all the land, buildings, and machinery of the petitioner in the city of Lowell.

Nor is it necessary now to attempt to lay down any definite rules for the valuation of land exclusively of buildings, and of buildings exclusively of land, which may be applied to every possible case. The only rule necessary to the decision in this case is, that the valuation of the land and buildings in the aggregate must be equal to the full and fair cash value of the whole parcel, including the land and the buildings as they exist at the time as of which the valuation is made, considered with reference to all practicable uses to which the parcel of land with the build-

ings on it can be put. If one uniform rule is to be adopted, the simplest undoubtedly would be to estimate the value of the parcel with the buildings on it ; and then to estimate the value of the land as if the buildings were removed from it, and make the difference the value of the buildings ; but we express no opinion whether such a rule should be adopted.

Without considering these exceptions in detail, it is enough to say that we find no substantial error prejudicial to the respondent.          *Exceptions overruled.*

*F. P. Goulding & J. J. Hogan,* for the respondent.

*E. T. Burley,* (*F. E. Dunbar* with him,) for the petitioner.