MASSACHUSETTS GENERAL HOSPITAL *vs.* INHABITANTS OF BELMONT.

SAME *vs.* SAME.

Middlesex.   January 17, 1921. — May 24, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Constitutional Law*, Taxation, Equal protection of the law.   *Tax*, Assessment, Exemption.   *Corporation*, Charitable, Taxation.   *Charity*.   *Massachusetts General Hospital*.   *McLean Hospital*.

In St. 1909, c. 490, Part I, § 5, cl. 3, as amended by St. 1914, c. 518, § 1, providing that there should not be included among the charitable institutions exempted from taxation corporations whose property is used for an insane asylum, insane hospital or for the treatment of mental or nervous diseases unless at least one fourth of all property so occupied on the basis of valuation thereof, and one fourth of the income of all trust and other funds and property held for the benefit of such institution and not actually occupied by it for such purposes " be used and expended entirely for the treatment, board, lodging or other direct benefit of indigent insane persons, or indigent persons in need of treatment for mental diseases, as resident patients, without any charge therefor to such persons either directly or indirectly," the classification made for purposes of exemption from taxation and of subjection to taxation is not irrational, oppressive, arbitrary, or

unequal in a constitutional sense. Following *Massachusetts General Hospital* v. *Belmont,* 233 Mass. 190, and distinguishing *Travis* v. *Yale & Towne Manuf. Co.* 252 U. S. 60, *Wallace* v. *Hines,* 253 U. S. 66, *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412.

The opportunity for exemption afforded by the statute above described is not illusory.

Upon exceptions by the petitioner to rulings of a judge of the Superior Court who, after the decision reported in *Massachusetts General Hospital* v. *Belmont,* 233 Mass. 190, heard those petitions upon the same evidence as was before the trial court at the previous hearing, and ordered abatements and judgments for the petitioner in amounts which it contended were too small, it was *held,* that

(1) Rulings made by the trial judge showed that he adopted the rule of " fair cash value " as defined in the earlier decision of the case;

(2) The decision of fact by the judge was not discordant to the principles of law adopted by him for guidance and was not reviewable;

(3) It was not erroneous for the trial judge to refuse to rule that the question "is whether the valuations placed by the assessors upon the petitioner's land and upon its buildings respectively are too high, and, for the purpose of determining the ' fair cash value ' of the property as a whole, neither the land nor the buildings can be valued at a figure higher than that fixed by the assessors," since the tax is single and, upon the petition for abatement, the question was, whether the assessment for the parcel of real estate, including both the land and the structures thereon as a unit, was excessive.

Two PETITIONS, filed in the Superior Court under St. 1909, c. 490, Part I, § 77, on March 6, 1916, and on February 5, 1917, respectively appealing from refusals of the assessors of taxes of the town of Belmont to abate a tax of $26,334.56, assessed in 1915, and a tax of $25,916.68, assessed in 1916 upon property of the petitioner in the town of Belmont used by the petitioner to conduct the McLean Hospital.

The petitions were referred to a commissioner, who filed reports to which were appended a transcript of all the testimony and all of the exhibits in evidence before him. He found that the valuation fixed by the assessors in 1915 "was not unreasonable or in excess of the fair cash value of the real estate." He found that the valuation fixed by the assessors in 1916 was $43,370 in excess of the fair cash value of the real estate.

The petitions were heard together by *Fox,* J., upon the reports of the commissioner and the exhibits and transcript of testimony appended to the report, it having been agreed that the testimony contained in the transcript should be received and considered as evidence at the trial in like manner as if the witnesses were present and so testified, and upon the testimony of Walter S. Crane, as-

sistant treasurer of the petitioner, who was called by it as a witness and testified in substance as follows: " The item of $29.54 referred to in . . . the commissioner's reports as representing the cost per patient per week at the McLean Hospital is based upon the actual amount of charges billed out. No payment for office expenses, insurance and things of that sort are included. The whole of the $29.54 was paid for doctors, nurses, etc. There was an actual deficit every year but one." The judge ordered the petition in the first case dismissed and in the second case found that the petitioner had been over-assessed in the sum of $43,370, ordered the tax abated in the sum of $806,68 and that judgment be entered for the petitioner for that sum and interest, and reported the cases to this court. After the decision reported in 233 Mass. 190, rescripts issued directing that the cases " stand for further hearing in the Superior Court."

The cases then were heard together in the Superior Court by *Sanderson,* J., without a jury, upon the same evidence as that upon which they previously were heard in that court. Rulings by the trial judge upon requests for rulings by the parties are described in the opinion.

The judge found in the first case that the fair cash value on April 1, 1915, of the real estate in question was $1,325,000, the fair cash value of the land being $300,000 and the fair cash value of the buildings and the machinery installed therein being $1,025,000, and that the valuation fixed by the assessors was in excess of its fair cash value in the sum of $18,600; and he ordered that the tax assessed upon the property for that year be abated in the sum of $364.56 and that judgment be entered therefor with interest and costs.

In the second case the judge found that the fair cash value on April 1, 1916, of the real estate in question was $1,325,000, the fair cash value of the land being $300,000 and the fair cash value of the buildings and machinery installed therein being $1,025,000, and that the valuation fixed by the assessors in 1916 was in excess of its fair cash value in the sum of $68,370; and he ordered that the tax assessed upon the property for that year be abated in the sum of $1,271.68, and that judgment be entered therefor with interest and costs.

The petitioner alleged exceptions in both cases.

M. *Storey,* (*H. S. Davis* with him,) for the petitioner.

*A. L. Taylor,* for the respondent.

RUGG, C. J.  These are petitions for abatement of taxes.  St. 1909, c. 490, Part I, § 77.  After the decision reported in 233 Mass. 190, the petitions were heard in the Superior Court and are here a second time on the exceptions of the petitioner.

1. It is urged now as before with great earnestness that St. 1914, c. 518, § 1, is unconstitutional in that it establishes an unreasonable and arbitrary basis for taxation.  Special reliance in this connection is placed upon *Travis* v. *Yale & Towne Manuf. Co.* 252 U. S. 60, *Wallace* v. *Hines,* 253 U. S. 66, and *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, decided since our earlier adjudication.  The statute here assailed, in its aspect most hostile to the petitioner, removes an exemption from taxation hitherto granted to charitable corporations and enjoyed by the petitioner in common with all other such corporations.  It subjects the petitioner to taxation only in the event that it fails to devote one fourth of its property, owned and occupied as an insane asylum, and one fourth of the income of its other property held for the benefit of such asylum, for the direct benefit of indigent insane resident patients.  If it complies with that condition, the petitioner still is entitled to full exemption from taxation.  If it does not meet that condition, then its property is made subject to taxation.  In that event, however, the petitioner is not taxed at another rate, upon a contrary footing as to valuation, or in any respect upon different terms from those established for other taxpayers.  Unless it complies with the terms of the statute, the petitioner may lose its exemption from taxation.  If it becomes liable to taxation under the terms of the act, there is no discrimination against it.  It is the same taxation in every particular to which the great body of other taxpayers are liable under general laws.  It was held when the cases were here before that the classification made by the statute, for purposes of exemption from taxation and of subjection to taxation, could not be pronounced irrational, oppressive, arbitrary or unequal in a constitutional sense.  The grounds of that decision have been considered anew in the light of these recent decisions of the Federal Supreme Court.  We are unable to perceive that they require a conclusion different from that reached when the cases were here before.  In *Travis* v. *Yale & Towne Manuf. Co.* 252 U. S. 60, a law

granting certain exemptions to residents which were denied to non-residents was held to violate the constitutional guaranty against the abridgment of privileges and immunities of citizens of other States in art 4, § 2 of the Constitution of the United States. In *Wallace* v. *Hines*, 253 U. S. 66, a State law fixing the value of the total property of interstate railroads by the total value of its stocks and bonds, and assessing the proportion of this value that main track mileage within the State bore to the main track of the whole line, was held an unwarrantable interference with interstate commerce and a taking of property without due process of law, when it appeared that the cost of building and maintaining tracks outside the State was far greater than within, and that terminals, land grants and other expensive and valuable properties outside vastly exceeded those within the State. The point decided in *F. S. Royster Guano Co.* v. *Virginia*, 253 U. S. 412, was that a State law whereby all the income of local corporations derived from business done both within and without the State was taxed, while income derived from business done outside the State by local corporations doing no business inside the State was exempt from taxation, was arbitrary and violative of the constitutional provision requiring equal protection of the laws. It seems to us that none of the principles declared in these three decisions are relevant to the issue here raised. Indeed the constitutionality of the act here assailed appears to us to be within the sweep of the principle stated in the judgment in the last case, 253 U. S., at page 415, in these words: " It is unnecessary to say that the ' equal protection of the laws ' required by the Fourteenth Amendment does not prevent the States from resorting to classification for the purposes of legislation. Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard. But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy. *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232, 237. *Michigan Central Railroad* v. *Powers*, 201 U. S. 245, 293. *Keeney* v. *New York*, 222 U. S. 525, 536. *Citizens' Telephone Co.* v.

*Fuller,* 229 U. S. 322, 329. *Northwestern Life Ins. Co.* v. *Wisconsin,* 247 U. S. 132, 139. Nevertheless, a discriminatory tax law cannot be sustained against the complaint of a party aggrieved if the classification appear to be altogether illusory." In *Watson* v. *State Comptroller of New York,* 254 U. S. 122, 124, occur these pertinent words (uttered since our former decision), respecting the powers of the States as to taxation: "Any classification is permissible which has a reasonable relation to some permitted end of governmental action. It is not necessary . . . that the basis of the classification must be deducible from the nature of the things classified. . . . It is enough, for instance, if the classification is reasonably founded in the 'purposes and policy of taxation.' "

The question has been re-examined in the light of the present argument. The statute now attacked puts in a class by themselves for purposes of tax exemption and of taxation those charitable corporations which are devoted to the care of insane and the treatment of nervous and mental diseases and establishes for them taxation and exemption from taxation on a different footing from that of other charitable corporations. Although in fact this classification includes only one other corporation beside the petitioner, we still incline to the view that it cannot be pronounced an irrational classification. Without reiterating the grounds stated at length in the earlier opinion, we see no reason for changing them or for reaching a different conclusion.

The real and fundamental difficulty appears to us to be that the General Court has changed the law respecting exemptions from taxation. That, however, so long as a valid classification is made, is not a constitutional question, but a matter of legislative policy with which we have nothing to do.

2. The petitioner urges again the proposition that the opportunity for exemption which the statute purports to afford is illusory. This is in substance an argument that the statute discloses on its face that there is no reasonably practicable method whereby the petitioner may take advantage of the exemption apparently offered. We accept, of course, the principle declared in *American Manuf. Co.* v. *St. Louis,* 250 U. S. 459, 462, 463, that "the question whether a State law or a tax imposed thereunder deprives a party of rights secured by the Federal Constitution depends not upon the form of the act, nor upon how it is construed

or characterized by the State court, but upon its practical operation and effect." The statute was construed as to its broad meaning and as to its practical operation and effect in the earlier decision. The conclusion then was reached that it was not an unworkable piece of legislation. A review of the questions involved upon this branch of the case does not lead us to any alteration of judgment. Doubtless more refined definitions may be required in the solution of subsidiary difficulties under the statute, when its scope with reference to particular problems is under inquiry, than were attempted in that opinion or than are demanded now.

3. It is not necessary to examine one by one the several requests for rulings. The substance of the action of the trial judge was that he adopted the rule of " fair cash value " as the test for taxation as those words have been defined in our decisions concerning taxation. Those definitions are set out in some detail in the earlier decision and need not be reiterated. The elements there enumerated are to be considered in deciding what is the fair cash value on the date fixed by the law to the extent that they have a bearing upon that point. They ought to be within the field of vision of the tribunal charged with the duty of finding the value, although practically many of them may have no weight. No one of them, so far as relevant, is to be excluded; but the sum of them all cannot inflate the value beyond the price at which the property will sell in the market under fair conditions at the time designated. It cannot be said as matter of law that any of the elements to which reference was made in the requests for rulings granted by the judge were so remote as to be utterly inapposite. As we interpret the several requests granted and refused, the judge followed this rule established by our statute as interpreted by our decisions. This ground is covered by the earlier decision and need not be further amplified.

4. The decision of fact reached by the judge cannot be declared discordant to the principles of law adopted by him for guidance. While a much larger abatement would have been well justified, we cannot say that that actually made was wholly without foundation in evidence.

5. The petitioner requested a ruling that the question " is whether the valuations placed by the assessors upon the petitioner's land and upon its buildings respectively are too high, and, for the

purpose of determining the 'fair cash value' of the property as a whole, neither the land nor the buildings can be valued at a figure higher than that fixed by the assessors." The denial of this request was not erroneous. When several different parcels of real estate are valued, a landowner seeking an abatement makes out his case by proving that one parcel is assessed for a greater sum than its fair market value, and thereby the inquiry is not opened whether other parcels have been assessed at less than their fair market value. *Lowell* v. *County Commissioners,* 3 Allen, 546, 549. But buildings for the purposes of taxation are in legal contemplation a part of the land on which they are erected. *Milligan* v. *Drury,* 130 Mass. 428. *McGee* v. *Salem,* 149 Mass. 238. St. 1909, c. 490, Part I, § 3. Although the statutes require a separate valuation of each lot of land without buildings and of the buildings exclusive of land, yet the valuation of the several parcels of land with the buildings thereon each constitutes a single assessment. The tax is single. The lien under the tax laws is indivisible. *Boston Rubber Shoe Co.* v. *Malden,* 216 Mass. 508, 510. Under a petition for abatement the question is whether the assessment for the parcel of real estate, including both the land and the structures thereon, is excessive. The component parts, on which that single assessment is laid, are each open to inquiry and revision by the appellate tribunal in reaching the conclusion whether that single assessment is excessive. See *Tremont & Suffolk Mills* v. *Lowell,* 163 Mass. 283.

*Exceptions overruled.*