STATE BOARD OF TAX APPEALS.

1935, 1936 and 1937 Cases

CITY OF JERSEY CITY, PETITIONER, v. HARBORSIDE WAREHOUSE COMPANY, INC., RESPONDENTS.

1938 Case

HARBORSIDE WAREHOUSE COMPANY, INC., PETITIONER, v. CITY OF JERSEY CITY, RESPONDENT.

Decided January 21, 1941.

For the city of Jersey City, *James A. Hamill* (by *Frank P. McCarthy*).

For Harborside Warehouse Co., Inc., *Wall, Haight, Carey & Hartpence* (by *John A. Hartpence*).

QUINN, President. These cases were tried and argued together, since they involve assessments upon the same property, for different years. The subject-matter of the assessment is an improvement, consisting of an eight-story industrial structure located in Jersey City, adjacent to the north side of the Pennsylvania Railroad station, designed as a warehouse and used for that purpose during the period presently under consideration and since its construction in 1930, except for a period at the outset when the operating company was in bankruptcy. The building consists of three units. Unit 1, on the southerly end, measures 320 by 160 feet, and is constructed of reinforced concrete and structural steel framing, encased in concrete with concrete columns and brick and concrete side walls. Units 2 and 3 are pairs of eight-story industrial buildings, likewise of reinforced concrete with brick and concrete side walls and reinforced concrete columns, each in a ratio of approximately five to three, in size, as compared with Unit 1.

All three units are supported by a system of steel-jacketed concrete piles driven to rock, are heated by a central heating plant consisting of three boilers, are lighted by electricity throughout and are served throughout by fire sprinkler and fire house line systems. There is a total of twenty-eight freight and nine passenger elevators, and, there are sanitary facilities on every floor of each unit. Unit 1 incorporates a concrete roadway ramp into the building measuring 400 by 50 feet. The building is devoted principally to dry or common storage space and to a lesser extent, to cold storage and space rented for light manufacturing.

In connection with the method of proof relied upon by the taxpayer, it is important to note that the Harborside Warehouse Co., Inc., owner and operator of the building, holds only a leasehold interest in the land, the owner thereof being the Pennsylvania Railroad Company, to which ownership the improvement will fall, under the terms of the lease, at its termination, either at the expiration of the basic term in 1975, or the renewal period in 1993.

For each of the years presently in question the property was assessed by the taxing authorities of the city in the sum

of $5,137,000, which was reduced, on appeal, by the Hudson County Board of Taxation, to the amount of $3,000,000, for each of the years 1935, 1936 and 1937. In 1938 the taxpayer's appeal was dismissed. There appearing to be no rational explanation for the divergent results thus arrived at, there arises an irreconcilable conflict in the presumptions of correctness which ordinarily attend determinations by the county boards of taxation. See *Newton Trust Co.* v. *Atwood* (*Supreme Court,* 1908), 77 *N. J. L.* 141; 71 *Atl. Rep.* 110; *The Aeolian Co.* v. *Borough of Garwood, New Jersey Tax Reports,* 1912-1934, *p.* 611; *City of Newark* v. *Imperial Laundry Co., New Jersey Tax Reports,* 1934-1939, *p.* 754.

The tax history of the property is further allegedly obscured by the facts that the judgment of this board reducing the assessment for the year 1932 from $5,137,000 to $3,000,000, was entered by consent of the city, that the city failed to appeal from a county board judgment making a like reduction in assessment for the year 1933, and by the act of the city in fixing the assessment for the year 1934 at $3,000,000, in the first instance. The history of the condition of the building, however, may furnish an explanation for the conduct of the assessing authorities. On October 1st, 1931, the construction of the improvement had reached a point of near completion, but the roof of Unit 3 was not complete on that date, nor were the main stairway from the second floor to the roof, the elevators and electrical work and glazing in Unit 3 installed. Because of the bankruptcy of the original projector of the enterprise, this condition of incompletion continued until the period of time between November, 1933, and May, 1934, when the building was completed at an additional cost of approximately $240,000. In the interim, there was considerable deterioration and damage caused by the influx of the weather through the incomplete roof. While there is no indication in the record as to the market value of the structure on the several assessing dates prior to those for the years presently under consideration, the difference in the true value of the building before and after the final expenditures for completion, may very well have been substantially in excess of the amount of such expenditures.

In any event, the tax history of this property and the proceedings thus far in the several appeals before us, present such inconsistencies and confusion that we have deemed it necessary to approach the valuation issues herein strictly upon the basis of the testimony adduced before us and a careful inspection of the property made by the board, without regard to presumptions respecting assessments and county board determinations, usually applicable.

It was stipulated that all the testimony adduced was to be deemed applicable to all four years under appeal.

The proof made by the city consisted primarily of the testimony of two construction engineers, as to the reproduction cost of the structure upon the several assessing dates. One of them approached the problem from the standpoint of cubic foot unit cost of replacement, based upon a physical inspection of the building, while the other adopted the more trustworthy method of detailed quantity and labor survey. Each allowed for depreciation and obsolescence at rates of approximately two per cent. per annum since the date of original construction in 1929. Because of rising construction costs, outweighing the effect of additional annual depreciation allowances, each of the witnesses arrived at an increasing scale of sound values for the structure for each of the tax periods before us. One, relying on cubic foot unit costs, found values ranging from $6,100,500 for 1935 to $7,226,800 for 1938. The other's conclusions varied from $6,049,887.98 in 1935 to $7,063,742.84 in 1938. So far as reproduction costs, depreciated, may properly be taken into account as a guide to the determination of true value under the circumstances of this case, these figures do not appear excessive estimates of such replacement value, the witness being competent and qualified estimators whose conclusions were not rebutted by the taxpayer. The estimates thus furnished are further corroborated by the provisions of the lease between the Pennsylvania Railroad Company, owner of the land upon which the improvement stands, and the predecessor of the taxpayer, Pennsylvania Dock and Warehouse Company, under which the lessee was obligated to erect structures described therein in terms corresponding to the buildings actually

erected, calling for an expenditure of a total of $8,536,000. Nothing was offered by the taxpayer to indicate that the original cost of the structures was less than the sum thus specified. The book value of the building on the books of the taxpayer was shown at the hearing to be $7,350,000, which is not far out of line with the estimates of sound value arrived at by the experts for the city.

The taxpayer attacks the proof offered by the city in support of its assessments, upon the ground that it is confined exclusively to reproduction cost without regard to the selling value of the property, citing *Central Railroad Co.* v. *State Board* (*Supreme Court,* 1886), 49 *N. J. L.* 1; 7 *Atl. Rep.* 306; and see *Turnley* v. *Elizabeth* (*Supreme Court* 1908), 76 *N. J. L.* 42; 68 *Atl. Rep.* 1094; *Theodore Schetty* v. *City of Jersey City* (*State Board,* 1940), 18 *N. J. Mis. R.* 37; 11 *Atl. Rep.* (*2d*) 18. While these authorities are pertinent in this connection, it remains to be considered whether the taxpayer's proofs are, in their turn, more accurately indicative of the true value of the structure, and whether the shortcomings of proof based upon replacement cost apply in ordinary force to the special valuation problem here presented.

Although the ultimate issue here involved was the true value of structures, not land, the taxpayer based its case almost exclusively upon the testimony of two real estate, not building, experts, whose testimony moreover did not purport to bear upon the value of the improved parcel of realty as a whole or upon the land value, or upon any residual improvement value which might result from a deduction of the latter from the former, but was directed toward the ascertainment of a valuation of the particular enterprise housed in the building, as a business, based upon the capitalization of its earnings. The deficiencies of this latter type of proof in the special circumstances presented by this case will be discussed presently. But we think it useful to point out our disagreement with the position taken by counsel for the city, representing a widespread construction by tax lawyers and officials of the ruling of this board in *City of Newark* v. *Timer, New Jersey Tax Reports,* 1912-1934, *p.* 587; *affirmed, Newark*

v. *Timer (Supreme Court,* 1934), 12 *N. J. Mis. R.* 125; 170 *All. Rep.* 37, to the effect that no testimony whatsoever may be received from real estate experts, as distinguished from construction or building experts, in an appeal of improvement valuations alone, as in the present case.

We have heretofore recently stressed the view that the statutes of this state respecting the assessment of real property for taxation make selling or market price of parcels of realty, consisting of land together with such improvements as are situate thereon as a unit, the guiding criterion for the determination of the true or assessable value thereof. *The Colonial Life Insurance Company of America* v. *City of Jersey City (State Board,* 1940), 18 *N. J. Mis. R.* 60; 11 *All. Rep.* (2d) 14; *Theodore Schetty* v. *City of Jersey City, supra.* The further statutory requirement that the assessors separate land and improvement valuations in making up their lists was seen not to be inconsistet with the paramount requirement of determining the selling value of every improved parcel, as a unit, in fixing the assessment, since buildings have no real sales value apart from the land upon which situate. *Id.* It should therefore be apparent that in an appeal on improvements alone, while testimony as to reconstruction cost is always competent, and sometimes of considerable probative weight, the most cogent evidence of the true value of the improvement from the standpoint of its effect upon the selling value of the parcel as a unit, that being determinative under the statute, would under ordinary circumstances be proof of the extent to which the presence of the improvement on the plot has increased the selling value of the entire parcel over the selling or market value of the land, were it vacant. See *Bonbright, Valuation of Property* 485; *Tremont and Suffolk Mills* v. *Lowell,* 163 *Mass.* 283; 39 *N. E. Rep.* 1028. This can best be established through the testimony of a competent real estate expert, making the valuation of the improvement residual, after proof of the value of the whole parcel, and then of the land alone.

The *Timer* case, *supra,* properly understood, is not to the contrary. In .that case, after an appeal by a taxpayer to a county board of taxation from an assessment upon improve-

ments only, and a reduction granted thereupon by such board, the taxing district appealed to this board, praying for restoration of the assessment as made. Upon the hearing, counsel for the taxing district sought to adduce the testimony of a real estate expert as to the value of the land and building as a unit, for the purpose of showing the land to be under-assessed. An objection to the question was sustained, it being apparent, as explained in the opinion of the board, *supra,* that the design of the petitioner was to change the issue from that raised by the petition of appeal, *i. e.,* the value of the improvement alone, the assessed value of the land not being under appeal, to a question of the value of land and building, and to justify the original valuation of the improvements, by establishing that the assessment of the entire parcel was not in excess of the true value thereof. The affirmance by the Supreme Court, *supra,* of the ruling of this board in that case was based upon the same fundamental concept, that in an appeal concerning an assessment upon improvements, the ultimate issue may not be expanded to embrace the valuation of the land.

Proof of the character suggested hereinabove, however, would clearly not constitute a departure from the single ultimate issue as to the true value of the improvements. Interrogation of the real estate expert as to the value of the property as an entirety would be merely intermediate to the development of the value of the improvements as residual, after deduction of the land value.

But, as already noted, the taxpayer herein offered no proof intended or calculated to be directed to the selling value, as between a willing buyer and seller by fair contract at private sale, either of the parcel as an entirety or of the land alone. Nor was there any attempt to show, even by capitalization of income, the value of the improvement to a fee owner thereof. The conception avowedly held by its witnesses of the issue herein, was that of the value of *the particular business enterprise housed in the improvement,* based upon capitalization of net income, but charging against earnings a deduction for a sinking fund to recapture the value of the building during the term of leasehold, because of the rever-

sion of the buildings to the lessor at the termination of the lease, as well as a deduction for rent paid to the landlord. The value thus arrived at for the improvement was $3,100,000. In other words, this valuation was that of the leasehold to the business tenanting the building. This approach ·fundamentally misconceives the theory of valuation for property taxation under our statutes. The taxing districts are entitled to hold every parcel of realty accountable for taxes in its full true value to a fee owner, and in the amount for which the property could· be sold by fair sale, unfettered by leases or other restrictions created by private contract. See *Becker* v. *Little Ferry* (*Supreme Court,* 1940), 125 *N. J. L.* 141; 14 *Atl. Rep.* (*2d*) 493. And it does not matter that the assessment was levied against a named taxpayer holding less than a fee interest in the property. *Id.* (at *p.* 144).

Aside from the vitiating effect of its treatment of the lease factor, upon the conclusions for which the taxpayer contends, we must regard with circumspection the use in any valuation methodology, of the net income of the particular business here housed in the improvement. The customary approval of .the use of income as a factor in valuation is based upon the relative stability of rentals produced by ordinary income producing property, such as stores, apartments, &c. But where income is subject to a substantial extent in a particular case to the factor of effectiveness of management, as in the present case, the reliability of the net income factor for valuation purposes is sharply reduced. Low or no net income of a business because of poor management is no more an index of true value of realty than spectacular profits resulting from managerial perspicacity. The capitalized earnings of a business, in short, as distinguished from the normal rental yield of real estate, measure what the business enterprise is worth, and not what the realty housing the business is worth. *Bonbright, op. cit., supra, p.* 491.

And in the present case the income yield shown by the books of the taxpayer may very well be subject to qualification, because of the status of the taxpayer as a wholly owned and controlled subsidiary of the Pennsylvania Railroad, owner of the land. There is evidence in the record of unwillingness

of the taxpayer at times to accept certain business which might have reduced the extent of its vacancies and increased its net income. We are not entirely satisfied that its policies in this connection were not dictated by the interests of the railroad, rather than by those which would motivate an entirely independent warehouse company. Furthermore, there is evidence in the record of the use by the railroad of valuable space in, and connecting facilities of the building without any consideration paid therefor to the warehouse company, other than the allowance of a credit in the determination of the land rental. But, as seen above, the rent paid by the warehouse to the railroad was an improper charge against gross earnings for purposes of valuation of the improvement in the first instance. Therefore the failure of the taxpayer to have received and entered as a receipt the value of the special facilities granted to the railroad militates further against the validity of the capitalization of earnings approach employed by its experts.

Evidence was introduced by the taxpayer showing a cycle of declining warehouse operations generally in the metropolitan area since the construction of the building, and this proof has been taken into account in our conclusions, as bearing upon the issue as to whether a prudent operator would have undertaken to reproduce this building as of the several assessing dates for the cost which the city's witnesses satisfactorily showed would be involved in such replacement.

And finally, we have given some weight to the fact that taxpayer's books show that the building is carried therein at a value of $7,350,000, in view of the importance which the Supreme Court has attached to book values for tax valuation purposes. *Second National Bank and Trust Company of Red Bank* v. *State Board of Tax Appeals (Supreme Court, 1935), 114 N. J. L.* 573; *178 Atl. Rep.* 96; *General Motors Corp.* v. *State Board of Tax Appeals (Supreme Court, 1940), 124 N. J. L.* 212; *11 Atl. Rep. (2d)* 314.

A review of the foregoing will indicate that the best proof, *i. e.,* competent estimates of the sales value of the improvement in its relationship to the parcel of realty of which it is an integral component, is absent in this case. We have therefore considered such other proof as was introduced for

whatever weight it might have upon the statutory issue of true value, and made our own inspection of the property. Upon the basis thereof we are of the opinion that the property had a true value of $5,000,000 as of each of the assessing dates herein involved, and the assessments will be ordered fixed in said sum.

Judgment accordingly.