## No. 211.

DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, PROSECUTOR, v. STATE BOARD OF TAXES, ETC., DEFENDANT.

## No. 216.

CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR, v. STATE BOARD OF TAXES, ETC., DEFENDANT.

## No. 217.

LONG DOCK COMPANY, PROSECUTOR, v. STATE BOARD OF TAXES, ETC., DEFENDANT.

## No. 218.

LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR, v. STATE BOARD OF TAXES, ETC., DEFENDANT.

## No. 219.

ARLINGTON RAILROAD COMPANY, PROSECUTOR, v. STATE BOARD OF TAXES, ETC., DEFENDANT.

## No. 235.

PENNSYLVANIA RAILROAD COMPANY, UNITED NEW JERSEY RAILROAD AND CANAL COMPANY, PROSECUTORS, v. STATE BOARD OF TAXES, ETC., DEFENDANT.

## No. 236.

WEST SHORE RAILROAD COMPANY, NEW YORK CENTRAL, ETC., COMPANY, LESSEE, v. STATE BOARD OF TAXES, ETC., DEFENDANT.

Argued June 6, 7, 1923—Decided November 20, 1923.

**Taxation—Assessment of Railroad Property at Terminals in Hudson County—Valuations Increased in Some Instances.**

On *certiorari* to judgments of the state board of taxes and assessments in matter of taxation.

Before Justices TRENCHARD and PARKER.

For the prosecutors, *Albert C. Wall, Maximilian M. Stallman* and *Robert J. Bain.*

For the defendant, *Edward P. Stout.*

PER CURIAM.

These writs, as prosecuted, amount to a concerted attack upon the valuations for 1922 of real estate in Hudson county belonging to the several prosecutors, consisting of main stem and second-class railroad property, situated for the most part on the tidewaters of Hudson river and New York bay. A glance at our law reports will show that these tax valuations are a source of constant litigation, and that the settlement of that litigation by the courts, reviewing the tax board on matters of fact as well as of law, is a matter of some difficulty. In the cases at bar a very large number of items are involved, and counsel do not undertake to deal with them in detail, either in the argument or in the briefs. The stress of the argument of prosecutors is that the valuation for 1922 shows a total increase over that for 1921 of about $23,000,000, or an average of forty-two per cent. of the total values of 1921; and that such an increase is not justified by the evidence taken before the state board and now before us; and we are asked, apparently, to set them aside *in toto* and send the whole matter back for a new assessment. For the board it is argued that the valuations are severally and in total sustained by the evidence taken, and we are asked generally to affirm the judgments under review. We may as well say at this time that these valuations are not to be rigidly tested by any constant factor, and that while there is, of course, much similarity in all these water-front properties, as was said by this court in *Long Dock Co.* v. *State Board of Assessors,* 89 *N. J. L.* 108, this does not justify the court in disregarding the separate identity of the various properties.

Certain general matters seem to be satisfactorily settled by the evidence, and these may as well be stated as a preliminary to detailed examination.

1. That with the growth of New York and vicinity as a commercial centre, the water-front properties have been progressively taken up for mercantile purposes, so that available properties have, consequently, become scarce, and as a result are commanding substantially higher prices.

2. That certain localities should be valued higher than others according to situation and accessibility.

3. The witnesses on both sides seemed to agree that the "peak" of values lies in the neighborhood of the Pennsylvania and Lackawanna terminals in Jersey City and Hoboken, and that values shade off thence in both directions.

4. There seems to be a minor "peak" at Constable Hook in Bayonne, which affects railroad property in that immediate locality.

5. Sales in the Greenville district indicate considerable activity there, and substantial increase in taxable value is justified in view thereof.

6. We cannot accede to the suggestion on behalf of prosecutors that "railroad" value is not market value, nor a proper test thereof. The pronouncement of this court in the *Long Dock Case, supra,* is to the contrary. We there said, in substance, that it was proper to consider fair value for average business, whether a greater value existed for railroad purposes; and the increment, if any, because of assemblage and consolidation of properties.

7. We do not think it follows from the fact, if it be a fact, that the value of a particular tract in a particular situation has increased by a certain percentage, that other tracts elsewhere have increased in value to a like extent.

Bearing these principles in mind we proceed to an examination of the particular items. And here it may be noted: (*a*) that of the items appealed, many show the same valuations in 1922 that were placed on them for 1921; (*b*) that in many cases of increase the board was apparently unanimous

as to increase and its extent; (c) that in many other cases the board was unanimous for an increase but divided as to the extent thereof. Speaking for the purposes of this case, and after a careful consideration of the facts and arguments, we conclude that ordinarily valuations of 1922 identical with those of 1921 should be affirmed; valuations ordered by a unanimous board should not be set aside unless it is entirely clear that the evidence will not fairly support them, and valuations by a divided board should be determined according to circumstances.

Taking up the New York Central group, we find that some twenty-three items, all of which exhibit the same valuations as in the preceding year, and which can have no legitimate bearing either on the total increase either of millions or of per cent. We can see no reason at all for disturbing this group of valuations, and they will be affirmed, with costs.

In the Lehigh Valley group of fifty-two items, thirty-nine show no increase, and these will be affirmed. The other thirteen will now be considered. Identifying each by acreage, and stating the increase in thousand per acre, they tabulate thus:

    2.433 inc. from 54 to 55.
    16.414 inc. from  7 to 15.
    13.638 inc. from  8 to 20.
    1.106 inc. from 15 to 20.
    0.303 inc. from 4.8 to 15.

As to these, the increases were approved by apparently the whole board, and we think them proper. They will be affirmed. Items:

    2.835 from 54 to 65.
    3.497 from 14.4 to 20.
    13.650 from 14.4 to 15.
    38.38  from 55 to 65.
    3.035 from 10 to 20.
    88.365 from 14.5 to 20.

As to these, the board was not in accord but we concur in the majority finding. They will be affirmed. Items:

    5.941 from 28 to 40; and
    25.673 from 20.5 to 40.

We consider this value too high and adopt the minority value of 30 in each case. Item 1.230, not assessed in 1921, will be affirmed.

Erie group. This embraces only seven items, on three of which there was no dissent in the board, they are:

3.790 from 1.2 to 2.  (Arlington Railroad.)

6.257 from 84 to 90.

0.924 no change.

As to these, we do not feel that the findings of the board should be disturbed.

The other four items are:

16.555 from 66 to 87 or 30 per cent. minority 72.988.

67.83  from 64 to 90 or 40 per cent. minority 70.576.

2.816 from 60 to 90 or 50 per cent. minority 66.

3.164 from 60 to 90 or 50 per cent. minority 66.

They consist of two "terminal" tracts and two "bulkhead" tracts and are typical of the great increases challenged in the general argument. Conceding the great increase in valuations apparently indicated at the two ends, of the line, Weehawken and Constable Hook, and the high sales price of the elevator tract in this immediate vicinity, we still are unable to agree that such great advances in one year are fairly supported by the evidence. So far as the price of the elevator tract is concerned, that sale was made in 1916, at a time when business was enormously and unhealthily stimulated by the war in Europe, and under circumstances tending to force an unusual price. We have already said that a given per cent. of increase at one place in the line does not necessarily call for a similar percentage elsewhere, and that is applicable now. We think that a figure of 75 for all four items is applicable; and that figure will be applied.

In the Lackawanna group a somewhat similar disposition will be made. On item 10.315 there was no dissent in advancing from 92 to 96. That will be affirmed. In item 7.621 the minority valuation was slightly higher than the majority of 65. The majority valuation is affirmed. In item 16.136 the increase to 68.8 seems reasonable, and that will be

affirmed. The advances in the other items we consider excessive. Item 131.84, advanced from 64 to 95, will be fixed at 80. The same with respect to item 40.068. Item 1.525, advanced from 53 to 75 (upper ferry tract), calls for a substantial increase but not 41 per cent. A valuation of 65 is all that we think should be put upon it. Items 3.240 and 3.728 (main stem in terminal tract) were advanced from 78 to 95 and 96, respectively. They will be figured at 85 each.

Pennsylvania group. This embraces two items of Greenville terminal, three at the Jersey City terminus, and two at the adjoining Harsimus district.

The Greenville district, according to the state's expert, showed the point of lowest values; and yet the board increased tract 343.137 from 11.253 to 20, and tract 12.731 from 13.2 to 20. We consider this advance in part unwarranted. Tract 343.137 will be valued at 15 and the other at 16.

At the Jersey City terminal, tract 30.564 was advanced from 79.8 to 95. The minority valuation was 87.780 and we think is all the property will bear. The same of tract 3.623. Tract 2.932 was valued at 96 for 1921 and not advanced. That valuation will stand.

In the Harsimus district, tract 98.835 ("terminal tract") was advanced from 63.7 to 88.1, and tract 6.682 from 57.57 to the same figure, 88.1. What we have said about the adjoining Erie tracts is applicable, and the value of 75 adopted there will be applied here.

The New Jersey Central railroad group vividly illustrates what has been said respecting the minor "peak" in the Bayonne district. A number of parcels at that point show increases of one hundred per cent. and even more, apparently concurred in by the entire board. Such increases we consider are justified by the evidence, and they will be affirmed as respects the following items: 3.624, 8.898, 1.889, 5.841, 7.514, 0.851, 2.495, 7.504, 4.580, 4.028 and 19.342. These embrace most of the main line through Bayonne, and the Constable Hook and Port Johnson branches all in a rapidly

growing city and some connected directly with and running to deep water.

Tract 3.986 was raised from 12 to 20. That value will also be affirmed, although the board was not unanimous on the extent of the appreciation.

As to tracts 5.464 and 97.063, both increased from 55 to 65, the minority figures are not strikingly below those of the majority, which have respectable evidence to support them, and will be affirmed.

A similar result is reached as to tracts 3.120, 19.611 and 5.610.

The valuation of tract 6.302 we fix at 33·; that of 71.3 at 28. We are unable to see any proper ground for the values placed on these by the board.

There remain four large parcels:

84.724 raised from 14.5 to 30.

99.1    raised from 14.5 to 25.

28.718 and

24.613 raised from 20    to 40.

As to these four, the minority was hopelessly in disagreement, and the increases are so great so to be more than impressive. Lacking the unanimity accorded to similar increases just noted, and being in an entirely different locality, they requre most substantial support in the evidence, reasoning and facts, as well as mere expert opinions. In our view, they fail to have such support and cannot have the sanction of this court. Tract 84.724 is hereby valued at 20; tract 99.1 at 17.5; tracts 28.718 and 24.613 at 28 each.

This seems to complete the detailed survey of the items challenged. Rules in conformity with these views may be entered in the several cases.