24 N.J. Super. 213 (1953)
93 A.2d 785
CITY OF TRENTON, APPELLANT,
v.
JOHN A. ROEBLING SONS CO., RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1952.
Decided January 6, 1953.
*215 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Louis Josephson argued the cause for the appellant.
Mr. Crawford Jamieson argued the cause for the respondent (Messrs. Jamieson & Walsh, attorneys).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
The Division of Tax Appeals affirmed the action of the Mercer County Board of Taxation in reducing certain assessments for the year 1951 on buildings located on respondent's properties. The city now appeals.
The taxpayer is the owner of several tracts of land in Trenton, New Jersey, on which stand a large number of structures used in connection with the business of manufacturing certain types of steel wire. The various properties were grouped into four units for tax assessment purposes and the assessment imposed on the buildings in each unit is the subject matter of this litigation. The total assessments imposed were $3,213,900. The county board lowered them to $2,899,200, a reduction of $314,700, and the Division of Tax Appeals affirmed.
When assessments of this character are attacked, certain presumptions are recognized at the various hearing levels.
In the county board of taxation a presumption is applied that the quantum of the municipal assessment is correct and the burden is on the taxpayer to prove otherwise. In the Division of Tax Appeals the presumption is that the valuation as revised by the county board is accurate. Riverview Gardens v. North Arlington, 9 N.J. 167 (1952); Schaffer Belts, Inc. v. Division of Tax Appeals, 1 N.J. *216 Super. 35 (App. Div. 1948); Atlantic City Electric Co. v. Egg Harbor Township, 135 N.J.L. 60 (Sup. Ct. 1946). In this court the presumption is that the determination in the Division of Tax Appeals is sound and the burden is on the party attacking it to overcome that presumption. Prudential Insurance Co. v. Division of Tax Appeals, 133 N.J.L. 153 (Sup. Ct. 1945).
With respect to the nature of the burden assumed on appeal to the Appellate Division, various expositions have been made which, upon analysis, seem equal in content.
Tax Division valuations involving the resolution of questions of fact will not be disturbed unless "the evidence is persuasive that there was error" (Atlantic City Electric Co. v. Egg Harbor Township, supra), or unless "it is entirely clear that the evidence will not fairly support them" (Lehigh Valley R.R. Co. v. State Board of Tax Appeals, 12 N.J. Misc. 673 (Sup. Ct. 1934), or unless there was "palpable error." United New Jersey R.R. & Canal Co. v. State Board of Taxes and Assessments, 100 N.J.L. 131, 136 (E. & A. 1924). And the circumstance that both the county board and the Division of Tax Appeals reached the same result, the Division by unanimous vote, serves to make crystal clear the outlines of the burden thus described.
The contentions of the parties in this court on the factual problems presented to the administrative agencies reflect their partisanship. The city argues that reproduction cost less depreciation is the proper basis for determining value for tax purposes; that the taxpayer's book value is an important consideration and that market value is not the absolute test. On the other hand, the taxpayer claims that book value here has no probative force; that reproduction cost less depreciation, without regard to selling value, is not the proper basis for valuation, and that in this instance the only reliable criterion is the market value or selling price.
However, all of these matters are proper elements for consideration where the ultimate fact sought is that which the statute describes as "full and fair value" based on *217 what the property "would sell for at a fair and bona fide sale by private contract." R.S. 54:4-23. Original cost, cost of reproduction and depreciation are pertinent but not controlling incidents. Kearny v. Division of Tax Appeals, 137 N.J.L. 634 (Sup. Ct. 1948); Village of Ridgewood v. State Board of Tax Appeals, 129 N.J.L. 121 (Sup. Ct. 1942); selling price is "a guiding indicium of fair value." Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157 (1949); and book value "is a proper factor to be considered." Jersey City v. Harborside Warehouse Co., Inc., 19 N.J. Misc. 222 (St. Bd. Tax App. 1941). These factors form the basis for the general doctrine that the statutory valuation is not to be tested rigidly by any constant factor. Pennsylvania R.R. Co. v. Jersey City, 98 N.J.L. 283 (E. & A. 1922).
The record discloses that the land in question was a farm when first acquired in 1848 by the founder of John A. Roebling's Sons Co. The oldest building assessed was constructed in 1860. Thereafter, in the language of respondent's expert witness, "the plant has grown and expanded, with the result that today there is a very large and sprawling operation, outmoded in many respects for its utility even to the owner." Many of the buildings are 30, 40 and 50 years of age and older, and not of the type being built in more recent times for industrial purposes.
The assessment history of the four units involved is as follows:

 GROUP 1
 1948, 1949, 1950 ................... $1,045,500
 1951 ............................... $1,202,300
 Increase ........................... $ 156,800
 GROUP 2
 1948 ................................. $595,000
 1949, 1950 ........................... $849,500
 1951 ................................. $934,400
 Increase ............................. $ 84,900

*218
 GROUP 3
 1948, 1949, 1950 ..................... $515,750
 1951 ................................. $608,900
 Increase ............................. $ 93,150
 GROUP 4
 1948 ................................. $293,000
 1949, 1950 ........................... $393,000
 1951 ................................. $468,300
 Increase ............................. $ 75,300

It will be observed that the assessments of groups 1 and 3 remained constant for 1948, 1949, and 1950, while in groups 2 and 4 there were substantial increases in 1949. The 1951 increase was 15% for group 1, 10% for group 2, and somewhat short of 20% for groups 3 and 4. No specific explanation was offered for the assessment activity beyond the introduction of the valuation figures.
The county board reduced the assessments as follows:

 GROUP 1 $1,127,300
 GROUP 2 $ 849,500
 GROUP 3 $ 529,400
 GROUP 4 $ 393,000

Three expert witnesses testified at the hearing; two of them, a builder and a real estate expert, for the city, and one, a real estate expert, for the taxpayer. The basic conflict arose out of the methods employed by them in arriving at their valuations.
The building contractor estimated the value of the various buildings on a replacement cost less depreciation basis. He computed the total square footage of floor space, gave the reproduction cost per square foot, and deducted depreciation. His total sound value for all the units was $10,456,537. With respect to depreciation he conceded that his various estimates were predicated entirely on physical deterioration. No allowance at all was made for obsolescence or economic depreciation.
The city's real estate expert estimated the total market value of the buildings as $6,695,088. He gave no detailed *219 explanation of the reasons for this appraisal and mentioned no comparable sales. He, too, made no allowance for functional or economic depreciation in spite of the age of some of the buildings, the use to which some of them were being put, and the absence of room for expansion of the plant facilities generally, because of their location in a thoroughly built-up area in the heart of industrial Trenton.
Respondent's real estate appraiser fixed total value in terms of what the buildings would bring in the open market. This value he fixed at $2,988,200, although this figure is less than the book value. In explanation he pointed out that many of the buildings are outmoded, some to the extent that they are being used for storage purposes only. Even this is not an economical use because it is spread-out storage, rather than concentrated in a particular location. Further, he said that the present-day tendency and practice in industrial construction for manufacturing purposes runs to single story buildings. And in the taxpayer's case in some of the multistoried buildings the floors above the first one are being used for storage rather than manufacturing.
It was his judgment that if the plant were placed on the market it was very unlikely that any one would buy it as a unit. He could not "conceive of any intelligent industry taking over such an outmoded set of buildings."
The wide disparity in the testimony of these experts was resolved by both the county board of taxation and the Division of Tax Appeals; and they reached the same result. The determination of the weight to be given to the statements of expert witnesses in the first instance is for the hearing tribunals, and that weight depends upon their candor, intelligence, knowledge, experience, and "especially on the facts and reasoning" which are the foundation of their opinions. Delaware, Lackawanna & Western R.R. Co. v. Hoboken, 16 N.J. Super. 543, 562 (App. Div. 1951).
These tax boards have been created by the Legislature for the very purpose of settling disputes such as presented here. In reviewing their action the courts have due regard for that *220 objective and also for the knowledge and experience gained by the persons who compose the boards. Consequently the courts are "loth to interfere" with their findings on matters of fact "unless the evidence is persuasive that injustice has been done." Colonial Life Insurance Co. v. State Board of Tax Appeals, 126 N.J.L. 126 (Sup. Ct. 1941).
Our study of the record fails to demonstrate the existence of any palpable error in the conclusion of the Division. Consequently its judgment is affirmed.