The judgments of the Division of Tax Appeals are accordingly affirmed.

CITY OF PASSAIC, A MUNICIPAL CORPORATION, PETITIONER-APPELLANT, *v.* PASSAIC PIONEER PROPERTIES CO., RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 16, 1959—Decided April 2, 1959.

Before Judges GOLDMANN, FREUND and HANEMAN.

Mr. *William N. Gurtman* argued the cause for appellant.

Mr. *Albert H. Kreamer* argued the cause for respondent Passaic Pioneer Properties Co. (Mr. *Harry Nadell* and Messrs. *Gardner & Williams,* attorneys; Mr. *Kreamer,* of counsel).

Mr. *Theodore I. Botter,* Deputy Attorney General, argued the cause for respondent Division of Tax Appeals (Mr. *David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. This is a companion appeal to *Passaic v. Gera Mills et al.,* 55 *N. J. Super.* 73, decided this day.

The City of Passaic appeals from judgments of the Division of Tax Appeals ("Division") dismissing its appeals from judgments of the Passaic County Board of Taxation reducing the 1954 and 1957 assessments on real property owned by respondent Passaic Pioneer Properties Co. ("taxpayer") on Eighth Street, Passaic, and affirming those judgments. The property consisted of a 7.82-acre tract on which there were located 59 building units, most of them 40 to 60 years old. One building, and portions of three others, had been built within the past decade. The buildings were in generally fair or poor condition, and there was considerable evidence of deferred maintenance. The property had originally been a paper mill; for the tax years in question it was used as an industrial terminal, tenanted by many different industries.

The local assessment on the land in both 1954 and 1957 was $37,550, reduced by the county tax board to $31,280. The city assessed the improvements in 1954 at $410,200, and in 1957 at $411,700. The county board reduced these assessments to $287,450 in each year. The Division affirmed the county board's action.

The local assessments were the result of the revaluation program undertaken by the city in 1953 through the Cleminshaw organization of Cleveland, Ohio. The methods followed in revaluing industrial properties in Passaic were described by the city's expert Vermilya, who did the actual appraising. His figures, representing what he termed the "sound value" of the property, were submitted to Alfred Green, who was in charge of the total project for the Cleminshaw firm, and to Leonard Cleminshaw. They made no change. The figures were then passed along to the city and adopted by it as a basis for applying the 40% common ratio used for all Passaic properties, of whatever nature.

Vermilya's qualifications and our observations on some of the deficiencies of the appraisal methods used and his testimony are set out in *Passaic v. Gera Mills*. As in *Gera Mills*, Vermilya testified that the only formula used in appraising industrial properties was current reproduction cost less physical and obsolescence depreciation. By way of supplement to our outline of his testimony in the *Gera Mills* case, the record here shows that he measured each building and examined its construction. Using the outside measurements, he would determine the ground area and then apply a unit cost to that area, without regard to the actual floor area of the structure. He gave no consideration to rentable area nor to its rental value.

Vermilya testified that the property had a total replacement value of $2,419,450. After allowing for physical depreciation and functional obsolescence, he gave it a "sound value" of $1,025,520. The 40% common ratio applied to this figure determined the $410,200 assessment for improvements which the city fixed for 1954 as well as 1957. We commented on the method used by Vermilya in determining

depreciation and obsolescence in *Gera Mills,* as well as on his insistence upon "sound value," and total disinterest in market value.

Alfred Green, general supervisor of the revaluation project, testified that he had not analyzed Vermilya's figures; he knew nothing of industrial property construction costs. He had merely assembled the figures Vermilya gave him and calculated the assessment at the 40% ratio. Green was one of the men who had fixed the value of the land here in question at $12,000 an acre.

Before passing on to a summary of the testimony adduced by the taxpayer it should be noted with respect to the 1957 appeal that the unit costs of reproduction were compiled by the Cleminshaw organization in June 1952, without Vermilya's participation; that Vermilya applied these unit costs in the spring of 1953 in calculating his "sound values"; that these values were first used by the city in making its 1954 assessment as of October 1, 1953; and that the same figures were used as a basis for the 1957 assessment (as of October 1, 1956), without regard to any possible increase since 1953 in physical deterioration, functional obsolescence, or economic obsolescence.

The first expert produced by the taxpayer was Joel Schlesinger, a real estate broker and appraiser with 39 years' experience, president of a firm dealing only in industrial and commercial properties and the sale of vacant land and industrial sites. Much of the firm's business is in New Jersey—a large part of it in Passaic County. The company had negotiated a number of leases for industrial properties in the general area of the subject real estate. Schlesinger determined the fair value of the property on the basis of capitalization of income. He testified that he had considered the reproduction less depreciation approach, but discarded it because, in his opinion, no one in the present market would reproduce such a property. He mentioned that multi-story buildings in the North Jersey area were being sold at a fraction of replacement value—giving examples of such sales

—because they were no longer in style and operating costs were eating up any profits one might get out of them.

After describing the property, now converted to varied industrial tenancies, Schlesinger stated that in valuing it he had given consideration to the fact that in addition to rental paid for floor area used, most of the tenants purchased processed steam from the owner, a service they found very attractive. Steam sales accounted for 60% of the total income and about the same proportion of the expenses. There is no need to set out all the details of this expert's testimony relating to available space, rental and steam sale income, expenses, the capitalization percentage used and its justification, etc. Taking all factors into account, it was his considered opinion that the true value of the property was $455,000. This, he said, worked out to a square foot value considerably in excess of what certain properties (specifically cited) had been sold for in 1954.

A second expert produced by the taxpayer, Herman Schulting, Jr., had 30 years experience as a real estate broker and had done considerable appraisal work for state and federal agencies and for municipalities, including Passaic. The city admitted his qualifications. He explained that he had not used the reconstruction cost less depreciation method of valuation because he was dealing with an industrial terminal with some 19 tenants in it, and considered the property as one being put to its highest and best use at the time of his appraisal. He testified that the capitalization of income approach he had used was the one that would properly reflect a value which would be reasonable for a willing buyer and a willing seller to agree upon in the circumstances present. He described the antiquated character of the building and its limited usability. Schulting valued the property at $437,000; in his opinion, the owners would be hard pressed to get that much on a sale.

On rebuttal, Green admitted that where a pattern of rentals can be established, the capitalization of income method was a proper one. However, the Cleminshaw firm had used reproduction less depreciation and obsolescence in order to

put all Passaic industrial properties on the same valuation basis.

At the conclusion of the Division panel hearing the city argued in support of the theory on which it had tried its case that where a municipality uses one formula in establishing industrial property values, the value arrived at is the true value, even though the result does not reflect actual true value. Further, that a taxpayer may not take exception to a value so determined by using some method other than the one employed by the municipality. The only way the taxpayer may take exception to such value is to produce witnesses experienced in assessment procedures, who must testify on the basis of the formula used by the municipality. The same argument is projected here. The Division panel properly found no merit in the contention. It said:

"Recognizing that the true value of any property cannot be found with absolute mathematical certainty, the panel and the Division must rely upon appraisals resulting from such techniques used by experts which are best suited to determine true value, and thus fulfill the objectives of both the panel and the Division. After determining the suitability of the technique used, it is the Division's responsibility under statutory authority to find the true value of the property from the evidence submitted. Where a common level is involved, it is the Division's responsibility to apply the common level to the true value found."

The panel report then goes on to say:

"After an analysis of the evidence submitted, the panel is of the opinion that in its effort to determine the true value of the subject property, either the economic approach [capitalization of income] or the comparable sales approach to value is best suited to give a truer picture of the true value of the subject property and are to be preferred over the reproduction cost approach. The opinion is fortified by the testimony of a witness for the municipality who stated substantially that where a pattern of rentals could be established, such an approach as the economic approach was the proper one."

After thoroughly reviewing and analyzing the testimony, the panel found that the evidence preponderated in favor of the taxpayer, based upon the quality of the testimony

submitted in its behalf. As for the city's appeals in both the 1954 and 1957 cases, the panel concluded that the analysis and appraisal submitted by the taxpayer's experts indicated that the county tax board was justified in reducing the original assessments for both tax years, and it accordingly dismissed the city's appeals and affirmed the board judgments. As for the taxpayer's appeal from the county board's judgment for the tax year 1957, the panel noted that the petition filed by the taxpayer was based on the true value of the property and did not plead discrimination as a ground of appeal so that the latter question need not be considered. Since the true value testified to by its experts was in excess of the assessment figure set by the county board, no relief could be granted.

The Division adopted the panel report, affirmed the county board's reductions, and dismissed the appeals.

 The city's brief and oral argument on this appeal closely follow those made in the *Gera Mills* case. Its principal contention is that the Division should not have received evidence of value based on any other formula than the one it had applied to all industrial properties—reproduction or replacement cost less physical and obsolescence depreciation. This argument was considered and disposed of as being without legal foundation in our *Gera Mills* opinion. The taxpayer here was not precluded from proving fair value by resorting to the capitalization of income method.

 The city also argues that the Division wrongly imposed upon it the burden of overcoming the presumption of validity attaching to the county board judgments. Insofar as the city's appeals are concerned, the ultimate burden of persuasion was upon it. The Division found that the city had not discharged that burden, and we agree.

 The municipality repeats the contention made in the companion case that the Division erred in according greater weight to the qualifications and testimony of the taxpayer's experts. Such determination is left to the reasonable judgment of the Division. We find it was entirely justified in what it did.

It is next claimed by the city that the Division erred in several of its rulings on the submission and exclusion of evidence. We have examined each of the instances complained of and find the contention without merit. The panel acted well within the ambit of *R. S.* 54:2–16, as amended, and Division Rule XX adopted pursuant thereto. The city was not prejudiced by any ruling.

As in *Gera Mills,* the city contends that the findings of fact and conclusions of the panel report, upon which the Division's judgments are predicated, are not supported "by the preponderance of the evidence." Our reading of the record convinces us that the judgments are more than adequately supported by substantial evidence.

Finally, the city argues that the Division erred in failing to adjudge that the final determination of the assessments for 1954 should be fixed as the assessment for 1955, under the provisions of the Freeze Act, *R. S.* 54:3–26, as amended. It appears that the county tax board had on its own initiative, in application of the statute, reduced the 1955 local assessment to conform with its 1954 judgment. The city could have appealed under *R. S.* 54:3–21, as amended. It did not do so.

There was no error here, and this for the reasons stated in *Gera Mills.* Additionally, we note that counsel for the city initially agreed before the Division panel that the Freeze Act did not apply in this case. He then withdrew his statement and indicated that he would raise the matter at the end of the hearing. The city admits he did not do so and that therefore "the Division had no occasion to rule thereon."

The taxpayer did not appeal the Division judgment dismissing its appeal from the county board assessment seeking a further reduction. We are concerned here only with the city's appeals. The Division judgments affirming the county board and dismissing the city's appeals are affirmed.