55 N.J. Super. 73 (1959)
150 A.2d 67
CITY OF PASSAIC, A MUNICIPAL CORPORATION, PETITIONER-APPELLANT,
v.
GERA MILLS, GERA CORPORATION AND PASSAIC INDUSTRIAL CENTER, INC., RESPONDENTS-RESPONDENTS, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1959.
Decided April 2, 1959.
*77 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. William N. Gurtman argued the cause for appellant.
Mr. Vincent E. Hull argued the cause for respondents Gera Mills, Gera Corporation and Passaic Industrial Center, Inc. (Mr. Thomas E. Duffy, attorney).
Mr. Theodore Botter, Deputy Attorney General, argued the cause for respondent Division of Tax Appeals (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The City of Passaic appeals from judgments of the Division of Tax Appeals ("Division") determining the assessment on the real property of Gera Mills and its successor owners Gera Corporation and Passaic Industrial Center, Inc. (hereinafter "taxpayer") located on *78 Eighth Street, Passaic, N.J., for the years 1954, 1956 and 1957. The property in question consisted of a tract of about 19 acres on which there were located some 31 buildings described as the "older group," and 7 buildings "in the newer group built in the year 1951," as well as appurtenant ground improvements. The property had been a woolen mill, now converted to what is known as a "tenant mill," for tenants.
The assessments made by the municipal assessor were as follows:

 Local Assessment 1954 1956 & 1957
 Land ................. $93,000 $93,000
 Improvements ......... 1,214,100 1,194,100

The taxpayer appealed to the county board of taxation, with the result that the board reduced the assessments as follows:

 County Board 1954 1956 & 1957
 Land ................. $65,858 $65,858
 Improvements ......... 911,740 931,740

The municipality then appealed to the Division of Tax Appeals from the county board action, with the following results (the appeals for 1956 and 1957 were tried together):

 State Division 1954 1956 & 1957
 Land ................. $90,720 $90,720
 Improvements ......... 946,837 931,740

A preliminary word of explanation is required as to the last figure of $931,740 fixed by the Division judgment, in view of the different figure found in the Division panel's report.
Passaic assesses its property at a 40% common ratio figure. There does not appear to be any dispute on this appeal as to the value of the land. The area involved was corrected and agreed upon at the Division hearing to be 18.9 acres. Land value, before the 40% ratio for assessment purposes was applied, was fixed at $12,000 an acre by the city's expert, *79 and that figure was accepted by the Division panel which heard the appeal. As to improvements, the taxpayer's expert testified that he valued them in 1954 at $2,367,094 which, reduced to 40%, produced the $946,837 figure accepted by the panel for that year. Although the taxpayer's expert based his land value at $12,000 an acre for 1954, he reduced it to $10,000 an acre for 1956 and 1957. For these two years he gave a fair value of $2,422,643 for the land and improvements before reduction to 40%, using a land area of only 16.1 acres. The value he placed on improvements alone would then be $2,422,643 less $161,000 (16.1 acres at $10,000 an acre), or $2,261,643. 40% of this figure would produce an assessment on improvements of $904,657, the assessed valuation determined by the panel in finding No. 10 set out in its report to the Division, and accepted by the latter. Since only the city appealed from the county tax board action, and the $904,657 figure was less than the $931,740 assessment made by the board, the Division did not further reduce the board's assessment to the level shown in finding No. 10, but affirmed the county tax board judgment as to improvements while increasing the land assessment from that found by the board.
The city's expert Vermilya, testified that the reproduction cost of all the improvements was $5,595,230. After deducting physical depreciation and functional obsolescence he testified that the "total sound value" of all improvements was $3,035,303. The city then set the assessment at the 40% common level ratio, or $1,214,100.
The assessment in question was made as part of an overall revaluation program undertaken by the city as a result of an investigation of local assessment practices made by state authorities. The revaluation work was done by J.M. Cleminshaw Company of Cleveland, Ohio, in 1953. Vermilya had charge of the valuation of all industrial property. His qualifications as an expert were challenged by the taxpayer at the Division panel hearing, but he was allowed to testify. The record shows his qualifications to be as follows: he had studied engineering at Worcester Institute of Technology *80 in Massachusetts, but was not a graduate engineer. Vermilya had once worked as assistant town engineer. He had not attended any professional school to study real property appraisal, but was trained by Mr. Cleminshaw in appraising industrial realty. Vermilya had done appraisal work since 1948. Prior to the Passaic job he had appraised over 400 industrial properties, none of them in New Jersey. He was not a licensed appraiser, did not hold a real estate license in New Jersey, and had never bought or sold industrial property or had anything to do with such a transaction.
Vermilya testified as to the method he had used in appraising Passaic industrial properties. All appraisals were based on "the one formula of replacement cost, current, less depreciation due to all forms, physical and otherwise." The Cleminshaw company had, prior to the beginning of the appraisal work, investigated local material and labor costs and local labor efficiency, and in June 1952 compiled a set of "standard building unit costs" applicable to Passaic. Vermilya had nothing to do with this compilation. In the instant case, as in the case of all other Passaic industrial properties, he examined the taxpayer's properties personally. Applying the unit costs developed by the Cleminshaw company, he then established the reproduction value of the building. After making allowance for physical depreciation and for obsolescence (functional) depreciation he arrived at what he described as the "sound value" of the property.
Contrasted with the "total sound value" of $3,035,303 determined by Vermilya, the taxpayer's expert, as noted, gave the improvements a true value total of $2,367,094 for 1954, adjusting the figure for 1956 and 1957 because of certain changes and demolitions. It has already been mentioned that his true value figure for 1954 was accepted as correct by the Division, so that applying the 40% common ratio, the true value for improvements in 1954 was $946,837. The Division, therefore, increased the assessment on improvements from the $911,740 figure found by the county tax board for that year. Its valuation for 1956 and 1957 has been explained above.
*81 Finding No. 7 of the Division panel report was that:
"The reproduction cost new less depreciation and obsolescence figures submitted by the expert for the respondent as applied to subject premises result from his wide experience as a real estate expert and building contractor familiar with cost estimates on industrial properties.
The figures submitted by him are to be preferred over the testimony offered by the municipality wherein its expert, without any experience in the purchase or sale of industrial property or the construction of same, relied on unit costs compiled by the company by which he was employed."
The record shows that the taxpayer's expert was a licensed real estate dealer of New Jersey who had lived in the City of Passaic for 43 years up to 1950. In addition, he was a contractor and builder, having actually engaged in the supervision of construction and the building of various buildings, factories, and improvements to industrial plants. His qualifications were admitted by counsel for the city.

I.
Appellant city's main point is that the Division erred in receiving evidence of the value of the property in question on the basis of a formula other than the one known as "reproduction or replacement cost less physical and obsolescence depreciation," used by the city in the revaluation and assessment of all industrial properties in Passaic. It argues that "where a valid and competent revaluation constitutes the basis for the assessment of all the property in a taxing district on an equal ratio of the sound [sic] value established by such revaluation, the evidence on appeal should be confined to the formula or formulae applied in the revaluation, otherwise the burden of litigating such appeals will be limited only by the zeal and ingenuity of the appealing taxpayer, his counsel and his experts, a burden which should not in equity and fairness be imposed upon a taxing district which has gone to the great cost of making a revaluation in the interest of a fair and equal distribution of the burden *82 of taxing." It contends that taxpayers complaining of an assessment based on such a revaluation should be compelled to establish that (1) the revaluation program was not competent, (2) the formula or formulae used in such revaluation were not valid, (3) they were not properly applied to the particular property, or (4) there was a palpable error in any factual finding.
The position so taken by the city runs contrary to all established principles and is completely untenable. We deal with it at some length although the taxpayer's expert, too, approached the problem of value by considering reproduction cost less depreciation and obsolescence. What follows is of general application to all tax appeals; it has an even more immediate significance in the companion case of Passaic v. Passaic Pioneer Properties Co., 55 N.J. Super. 94, argued together with this appeal, where the taxpayer sought to prove true value on a capitalization of income basis.
Prior to the enactment of our 1947 Constitution, the 1844 Constitution, Art. IV, Sec. VII, par. 12, provided that "Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value." Our present Constitution, Art. VIII, Sec. I, par. 1, directs that property be assessed for taxation, "under general laws and by uniform rules"; the phrase, "according to its true value," no longer appears in the text. However, true value is still recognized as the foundation for property assessments in New Jersey. R.S. 54:4-1, as amended, continues to provide that all real and personal property within the jurisdiction of this State, not expressly exempted from taxation or expressly excluded from the operation of the General Tax Act, shall be subject to taxation annually "at its true value," determined by the local assessors. R.S. 54:3-13 still requires that each county tax board secure the taxation of all property in the county "at its true value," and R.S. 54:3-22, as amended, that the board, upon appeal by a taxpayer, summarily hear and determine the appeal and revise and correct the assessment "in accordance with the true value" of the taxable property.
*83 Newark v. West Milford Township, 9 N.J. 295, decided by our Supreme Court in 1952, considered the assessment of a municipal watershed, levied under R.S. 54:4-3.3, which made such property subject to taxation "at the true value thereof, * * * in the same manner and to the same extent as the lands of private persons." After stating that the statute was and is consistent with the provisions of the 1844 and 1947 Constitutions referred to above, the court went on to say that
"* * * The phrase `at true value' has a constitutional and historical meaning in the law of taxation of this State. True value is the consideration of the market value of the property at a fair and bona fide sale at private contract. True value of property of any kind is in essence the value it has in exchange for money. * * *" 9 N.J., at page 303.
It still remains true in tax appeal cases that "the ultimate fact sought is that which the statute describes as `full and fair value' based on what the property `would sell for at a fair and bona fide sale by private contract.' R.S. 54:4-23." Trenton v. John A. Roebling Sons Co., 24 N.J. Super. 213, 216-217 (App. Div. 1953); Aetna Life Insurance Co. v. Newark, 10 N.J. 99, 106 (1952); Riverview Gardens v. North Arlington, 9 N.J. 167, 175 (1952). And in Gibraltar Corrugated Paper Co. v. North Bergen Township, 20 N.J. 213, 218, 219 (1955), our Supreme Court declared that the 1947 Constitution worked no change in the statutory true value standard, "for it speaks only in terms of equality, leaving the denominator at which this is to be attained to legislative determination. * * * The Legislature has not disturbed the provisions which call for true value assessment, but the dominant principle now is equality of treatment and burden; the standard employed is but the level on which the objective is to be realized. * * *"
R.S. 54:2-35, as amended, provides that a county tax board determination may be appealed for review to the Division, under such rules and regulations as it may prescribe, *84 and the Division may give such judgment "as it may think proper." Review of assessed valuation, by a hearing de novo, is the principal function of the Division in individual tax appeals. On such review the true value of the subject property is the ultimate factual finding. Our courts have always recognized the statutory authority of the Division to try the issue of value.
The municipality's insistence that proof of value before the Division panel must, in any appeal stemming from the revaluation, be limited to reproduction cost less depreciation and obsolescence, that having been the sole standard it used in its revaluation program, not only does violence to judicial precedent but also to the broad legislative purpose to provide a review of assessed valuation on appeal by either the taxpayer or the taxing district, first before the county tax board and then before the Division of Tax Appeals. Were we to adopt the city's position, the result would be to curtail effectively tax appeals by individual taxpayers.
There may be many forms of evidence of the fair value of property, and any number of factors may influence the estimate of that value. The three basic approaches to value commonly used have been (1) replacement or reproduction cost of improvements less depreciation and obsolescence, plus land value; (2) capitalization of income; and (3) comparable sales of similar property within the area. These have been recognized by our courts in innumerable cases, among them Trenton v. John A. Roebling Sons Co., Aetna Life Insurance Co. v. Newark, and Riverview Gardens v. North Arlington, above; Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157 (1949); Kearny v. Division of Tax Appeals, 137 N.J.L. 634 (Sup. Ct. 1948), affirmed on opinion, 1 N.J. 409 (1949).
R.S. 54:4-23, as amended, by defining the fair value of property as the price for which it would sell at a fair and bona fide sale by private contract, suggests that selling price is a guiding criterion for the determination of value for assessment purposes. See the Hackensack Water Co. case *85 above, 2 N.J., at pages 162-163, where the court observed that "selling price is a guiding indicium of fair value and ordinarily is merely evidential, although it might under peculiar circumstances become controlling"; also L. Bamberger & Co. v. Division of Tax Appeals, 1 N.J. 151, 153 (1948); D.L. & W.R.R. Co. v. Hoboken, 16 N.J. Super. 543, 564 (App. Div. 1951).
In Kearny v. Division of Tax Appeals, above, 137 N.J.L., at pages 636-637, the court stated that "Reproduction cost depreciated, in the absence of evidence of sales of the same or comparable improvements, while not conclusive, is a persuasive factor in the determination of fair value." Book value has also been held a proper factor for tax valuation purposes, Trenton v. John A. Roebling Sons Co., above, 24 N.J. Super., at page 217; Jersey City v. Harborside Warehouse Co., Inc., 19 N.J. Misc. 222, 231 (St. Bd. Tax App. 1941); and in Aetna Life Insurance Co. v. Newark, above, 10 N.J., at page 106, the court observed that rental income may be a relevant factor in reaching true value for tax assessment purposes.
In short, valuation is not to be tested rigidly by any constant factor. Trenton v. John A. Roebling Sons Co., above, 24 N.J. Super., at page 217; Pennsylvania R.R. Co. v. Jersey City, 98 N.J.L. 283, 284 (E. & A. 1922). The right of the Division to consider the various factors bearing on the question of value is unquestioned; as the court in the Riverview Gardens case said in referring to R.S. 54:4-23, as amended, setting the statutory standard for assessment purposes, "The statute neither requires nor excludes any specific formula for measuring fair value." (9 N.J., at page 175.) Cf. Public Service Coordinated Transport v. State, 5 N.J. 196, 217 (1950).
Aside from established law, there are obvious reasons why we cannot embrace the city's contention that its revaluation formula is the only possible approach on a review of a particular assessment. Were this so, the taxpayer would be put to unreasonable expense and difficulty in obtaining the *86 necessary proof; he would have to spend almost as much time and money as the Cleminshaw firm in accumulating the cost data used, or in disproving them. Moreover, the formula adopted by the city in its revaluation survey will not necessarily produce the best and most reliable evidence of value. Although the reconstruction cost formula may be more reliable in valuing newly constructed buildings, the comparable sales or income capitalization approaches might be preferred in the case of old and outmoded buildings.
In the instant case we observe that application of the city's formula made no adequate allowances for the admitted fact that at least some of the improvements consisted in whole or in part of special purpose construction, or for the undisputed fact that the buildings were only 22% occupied in 1954, 55% in 1956 and 65% in 1957. Nor did it give due consideration to the fact that whereas the property had in past years been used for a textile processing and manufacturing plant, that operation had been completely abandoned, and soon after the first assessing date here involved the entire premises had become a "tenant mill," requiring certain renovations and alterations to accommodate the needs of the new tenants.
These latter considerations, among others that might be mentioned, explain in great part the difference between the results reached by the taxpayer's expert and the city's expert. Both used the same basic formula  reproduction cost less physical depreciation and obsolescence (the latter expert considered only functional, but no economic, obsolescence). The former gave proper consideration to the particular circumstances and characteristics of the property on the assessing date; the latter did not.
The companion case of Passaic v. Passaic Pioneer Properties Co., 55 N.J. Super. 94, throws light on certain aspects of city expert Vermilya's approach to his appraisal of industrial properties in Passaic. He was interested only in what he called "sound value," and did not consider it part of his job to investigate market value. But even if we equate his "sound value" to "market value," it does not *87 have the probative force that is contended for it by counsel for the city, and this for the following reasons, among others: (1) The validity of the figures set out in the compilation of "standard building unit costs," used but not prepared by Vermilya, was not proved. The compilation had been made in June 1952; the figures went into his valuation as of October 1, 1953. (2) Although Vermilya had measured the land areas of the buildings and then applied the costs of reconstruction, he could not testify, and refused to testify, to the component costs he considered in arriving at a per square foot reconstruction cost for a particular set of buildings. He could not supply the unit costs employed in the course of his valuation. (3) In figuring physical depreciation of a particular plant unit made up of several buildings or parts of buildings, Vermilya was unable to testify to the physical deterioration of the different parts; he stated that in all such cases he made an "average depreciation," based on observed conditions. He gave the same answer with respect to obsolescence allowed to each of the various buildings. In using the same figures for the 1956 and 1957 valuations as for 1954, he obviously took no account of the possibility that there had been further depreciation and obsolescence of the properties in question.
After carefully reviewing all the testimony, the Division panel adopted the figure submitted by the taxpayer's expert on the basis of reproduction cost less depreciation and obsolescence. The panel report also referred to the selling price of the property in question, noting that the sale, "while not conclusive as to the true value of the property, is considered as a check on the true value as given by the witness for the respondent [taxpayer]." Neither the taxpayer's expert nor the panel gave any consideration to the comparative sales approach in fixing the value of improvements, since there were no comparable sales of properties like those involved in the subject premises. Nor did the panel consider the income capitalization or economic approach, the taxpayer's expert stating that this method was impossible of application in the circumstances.

*88 II.
The city's next ground of appeal is that the Division erred in imposing upon it the burden of proof of overcoming the presumption of accuracy of the county tax board judgment. The Division panel report stated:
"The law of presumption as it pertains to hearings before the Division is well stated in North Bergen Township v. Dieckmann['s] Estate, 37 N.J. Super. 221.
The presumption in the instant case rests upon the County Board judgment, not upon the original assessment. Upon the presentation of proof by the municipality which is definite, positive and certain as to quality and quantity, the presumption became nonexistent. The burden of proof, however, rests upon the municipality."
As we understand the city's argument, it contends that on a taxpayer's appeal to the county tax board there is a presumption of validity in favor of the original assessment made by the local assessor; that where the county board reduces the assessment and the city appeals to the Division, the board's judgment carries a presumption of validity until the city puts in competent proof; and that when the city does so, the presumption disappears and the original presumption in favor of the local assessment is revived, and the taxpayer must then assume the burden of proof (persuasion) before the Division. We cannot accept the final aspect of this argument.
On appeal to a county tax board there does indeed exist a presumption in favor of the assessment made by the local taxing authorities, and the burden is on the appealing taxpayer to prove otherwise. A similar presumption attaches to the judgment of the county tax board on appeal to the Division of Tax Appeals. As was said in Riverview Gardens v. North Arlington, above, 9 N.J., at page 175, "The weight of the presumption so accorded the assessment or the judgment of the county board is overcome where, on the hearing de novo on appeal, the appellate tribunal is presented with sufficient competent evidence to determine the true value of the property." The presumption in favor of the county *89 tax board judgment stands until evidence is adduced before the Division which is "definite, positive and certain in quality and quantity." Aetna Life Insurance Co. v. Newark, above, 10 N.J., at page 105. Upon the introduction of evidence of this character, the presumption favoring the county board judgment "entirely disappears as a factor in the case." North Bergen Township v. Dieckmann's Estate, 37 N.J. Super. 221, 223 (App. Div. 1955).
We hold that the city, as appellant before the Division of Tax Appeals, had the burden of ultimate persuasion to upset the county tax board judgment. It clearly failed to carry that burden.
The Division did not find the proofs to be evenly balanced; it found, as a fact, that the figures submitted by the taxpayer's expert were to be preferred over the testimony offered by the municipality, whose expert relied on unit costs compiled by his company, who had no experience in the purchase, sale or construction of industrial property, and whose testimony, as already indicated, was in many respects defective and unconvincing.

III.
The city next claims that the Division erred in determining the appeals "on the principle that the testimony of a valuation expert, who has not bought and sold property in the taxing district area and who has not designed and built the kind of structures under consideration, is of lesser quality and worthy of lesser evidential value than the testimony of an expert who has bought and sold property and designed and built such structures." The answer to this argument is that the weight to be accorded expert testimony is a matter left to the reasonable judgment of the Division of Tax Appeals, and that judgment, when supported by substantial evidence, will not be disturbed, absent a showing of palpable error.
We held in the Roebling case, above, 24 N.J. Super., at page 219, that the determination of the weight to be given to the statements of expert witnesses is in the first instance *90 for the hearing tribunal, and that weight depends upon their candor, intelligence, knowledge, experience, and especially on the facts and reasoning which are the foundation of their opinions, citing D.L. & W.R.R. Co. v. Hoboken, above, 16 N.J. Super., at page 562.
We find no error in the Division panel's having preferred and given greater weight to the testimony and figures of the taxpayer's expert than to the city's expert.

IV.
The city claims error in several of the Division panel's rulings on the admission and exclusion of evidence. We find no merit in this contention.
The city fully recognizes that hearings before the Division are not intended to be confined by the strict rules of evidence. R.S. 54:2-16, as amended, provides that proceedings before the Division shall be conducted "in accordance with such rules of evidence and procedure" as it may from time to time prescribe. Division Rule XX declares that the proceedings and hearing may be as informal as possible "to the end that substance and not form shall govern, and that a final determination of all matters before it may be reached."
The several points made by the city under this heading are:
(1) The hearer should not have sustained the taxpayer's objection when the city offered testimony concerning discussions between Vermilya and a representative of the taxpayer, seeking to elicit whether the representative criticized or objected to the procedure used in valuing the subject property. Even though this testimony might have been allowed, the panel ruling was not prejudicial error.
(2) The panel should not have allowed a question to be put to Vermilya on cross-examination as to whether he had ever constructed any buildings of the type he had valued. The question was proper; it reflected upon the weight to be given his testimony.
(3) The panel precluded the city's attempt to put into the record through its witness Green, who had been *91 general supervisor of the Cleminshaw revaluation, testimony as to the participation of a citizens' committee appointed by the Passaic Director of Revenue and Finance. The purpose was to establish that the revaluation had been made with the cooperation of a committee representative of the various taxpayer elements of the community. This fact was of absolutely no materiality; rejection of the testimony was proper.
(4) One of the panel members, over the city's objection, interrogated the same witness concerning his procedure in valuing the land, and particularly concerning comparative land sales allegedly used in the revaluation project. The city argues that there was no real issue as to land value per acre, and that the only question was the size of the plot, ultimately established at 18.9 acres. The witness was unable to cite specific sales. The interrogation was proper, since it would throw light on just how valid the methods used in the revaluation project were.

V.
The next contention of the city is that the findings of fact and conclusions of the panel report upon which the Division judgment was predicated were not supported by the preponderance of the evidence. The short answer to this is that where the findings of the Division are supported by substantial evidence, appellate courts have consistently refused to disturb on factual grounds the judgment it has rendered.
As was observed in Kearny v. State Board of Taxes, 103 N.J.L. 26, 28 (Sup. Ct. 1926), affirmed on opinion, 103 N.J.L. 699 (E. & A. 1927), the Division occupies an important position in our tax system, especially for the determination of disputed questions of fact. "It was so designed by the legislature for that express purpose. In the absence of some exceptional or special reason, the normal functions of the state board of taxes and assessments [now the Division] in determining disputed questions of fact, as a fact finding *92 board in the first instance, should not be curtailed, suspended, interfered with or superseded by the courts."
Although the power of the courts to make independent factual findings in appeals from administrative agencies is made explicit under R.R. 4:88-13, judicial precedent clearly demonstrates their reluctance to do so. The policy now firmly established is that appellate courts will not ordinarily disturb factual determinations by administrative agencies founded upon substantial evidence. See Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501, 504 et seq. (App. Div. 1956). This principle has been expressed in a variety of ways. It has been said that the judgment of the Division should not be disturbed unless the evidence is persuasive that it erred. Aetna Life Insurance Co. v. Newark, above, 10 N.J., at page 104. The conclusions of the Division fixing valuation should not be set aside except for palpable error. Weston Electrical Instrument Corp. v. Newark, 11 N.J. Super. 493, 496 (App. Div. 1951). Our Supreme Court in D.L. & W.R.R. Co. v. Hoboken, above, 10 N.J., at pages 424-425, declared that appellate courts should not inject themselves into the field of original valuation except in very exceptional circumstances, pointing out that the task of coordinating and evaluating expert evidence has expressly been committed by the Legislature to the Division, "a body contemplated to bring an informed judgment from specialized experience to the nice balancing and ultimate resolution of the many complex factors involved."
Since we are of the opinion that the findings and conclusions of the Division of Tax Appeals are supported by substantial evidence, we need not deal with the argument advanced by the taxpayer that they may not be questioned on appeal because the city failed to file written exceptions to the panel report within ten days from the date of notice of its filing, as required by Division Rule XIX.

VI.
We deal, finally, with the city's claim that the Division erred in refusing to adjudge that the final determination *93 of the assessment for the year 1954 should be fixed as the assessment for 1955 under the provisions of the so-called Freeze Act, R.S. 54:3-26, as amended. That statute provides:
"Where no appeal is taken to the Division of Tax Appeals in the State Department of Taxation and Finance to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the 2 assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date. Where such changes are alleged the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect."
In the present case the county tax board proceeded on its own initiative, in application of the statute, to reduce the original assessment for 1955 to conform with its 1954 judgment. Whether that action was proper where, as here, the municipality had appealed to the Division from the 1954 county board judgment, is academic for the purpose of this appeal, and this for the reason that the city did not appeal the 1955 assessment to either the county tax board or to the Division, as it could have under R.S. 54:3-21, as amended.
The Division denied the city's motion to enter judgment for 1955 under R.S. 54:2-43, as amended, the counterpart of the statute just quoted, and which declares that the final judgment of the Division involving real property shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the appeal, not only for the assessment year in question but for the two succeeding assessment years, except as to changes in the value of the property occurring after the assessment date. The Division rested its denial of the motion upon the conclusion that only a taxpayer, and not a taxing district, may invoke the provisions *94 of R.S. 54:2-43, as amended, citing Hamilton Gardens, Inc. v. Hamilton Township, 45 N.J. Super. 124 (App. Div. 1957).
The Division is, of course, a creature of statute, and its jurisdiction is limited by statute. Whether the Freeze Act might apply to the tax year 1955 on the basis of a 1954 judgment favorable to the municipality was a legal question not to be determined in hearings before the Division of appeals specifically limited to the tax years 1954, 1956 and 1957. The Division would have no power to render such a judgment; there was nothing pertaining to the year 1955 legally before it.
The judgments of the Division of Tax Appeals are accordingly affirmed.