103 N.J. Super. 109 (1968)
246 A.2d 722
IN THE MATTER OF THE APPEAL OF THE CITY OF EAST ORANGE FROM THE ASSESSMENT OF PROPERTY IN THE TOWNSHIP OF LIVINGSTON, COUNTY OF ESSEX, FOR THE YEAR 1961.
CITY OF EAST ORANGE, RESPONDENT,
v.
TOWNSHIP OF LIVINGSTON, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1968.
Decided September 25, 1968.
*111 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Harold Friedman argued the cause for appellant Township of Livingston (Messrs. Clapp & Eisenberg, attorneys).
Mr. Jack Okin argued the cause for respondent City of East Orange.
The opinion of the court was delivered by LABRECQUE, J.A.D.
The Township of Livingston appeals from a judgment of the Division of Tax Appeals (Division) reducing the aggregate assessment levied upon lands owned by the City of East Orange comprising the portion of the East Orange Water Reserve located in Livingston.
The lands in question are fully described in In re Appeal of East Orange, 80 N.J. Super. 219 (App. Div. 1963), certification denied 41 N.J. 200 (1963). In that case the aggregate assessment for 1957 of $1,734,000 (which had been reduced by the Division to $1,238,110) was further reduced to $1,216,085 (based upon a 50% ratio). By virtue of the *112 "Freeze" Act, N.J.S.A. 54:2-43, the same figures were carried over to 1958 and 1959. There was no appeal from the 1960 assessment of $1,711.500 but the same assessment for 1961 was reduced by the Division to $1,181,900, and is now before us.
Under N.J.S.A. 54:4-3.3 public water supply lands are taxable in the taxing district where located "without regard to any buildings or other improvements thereon, in the same manner and to the same extent as the lands of private persons * * *." The method to be followed in the assessment of such properties has been fully set forth in a number of decisions, particularly City of Newark v. West Milford Township, 9 N.J. 295 (1952) and, more recently, In re Appeal of East Orange, supra, and need not be repeated here. The sole question with which we are concerned is the true value as of October 1, 1960 of the 1,485.59 acres of raw undeveloped land and its translation, by the use of a proper ratio, into the assessment for 1961.
At the hearing in the Division East Orange rested its case primarily on the testimony of its expert Franklin Hannoch, who had also testified in the 1957 appeal. Livingston relied on the testimony of its expert John O. Lasser, who had not testified in the 1957 case. Both were well qualified. For purposes of convenience the tract was subdivided into seven classifications based on elevation. The following is a breakdown of per acre values assigned by each expert for each classification, including also Hannoch's values as given in the 1957 case:

 VALUE PER ACRE IN DOLLARS
 Hannoch Hannoch Lasser
Class Elevation Acres (1957 case) (1961) (1961)
1 streams, etc. .................. 60.9 0 500 500
2 less than 170 ft. .............. 247.69 500 500 500
3 between 170-175 ft. ............ 92.9 750 500 800
4 between 175-180 ft. ............ 47.7 1,000 1,200 1,500
5 between 180-185 ft. ............ 42.35 1,500 1,600 2,000
6 above 185 ft. (wooded) ......... 894.05 2,000 2,000 3,000
7 above 185 ft. (cleared) ........ 100.00 2,500 2,500 3,500

*113 The Division adopted Hannoch's $2,363,825 valuation in toto and fixed the assessment at 50% thereof or $1,181,900. Although the petition of appeal had challenged the correctness of the 50% assessment ratio claimed by Livingston (the petition recited that it was actually 44.84%), there was no specific finding by the Division on that issue.
Initially, East Orange contends, in substance, that in the absence of either a change in the property or a subsequent revaluation, our decision in the 1957 appeal is controlling. Not so. Each annual assessment is a separate entity, distinct from the assessment of prior or subsequent years. Borough of Hasbrouck Heights v. Div. of Tax Appeals, 54 N.J. Super. 242 (App. Div. 1959). While tax history is evidential and often resorted to on review of an assessment, Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 103-04 (1952), the ultimate test is whether or not the assessment is based upon true value. In re Kresge-Newark, Inc., 30 N.J. Super. 489 (App. Div. 1954). The mere fact that, in general, the tax assessor of Livingston had not changed assessments on other unimproved properties in the township since the 1957 revaluation did not preclude a finding that the true value of the subject property had increased since that time, although it would have a bearing on the ratio to be applied in fixing the assessment on the subject premises. Further, the fact that East Orange did not appeal the 1960 assessment does not estop it from challenging the 1961 assessment or contending that the 1957 assessment controls. In re Mutual Benefit Life Ins. Co., 35 N.J. Super. 113, 116 (App. Div. 1955). Cf. Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 311-12 (1951).
As noted, the hearing before the Division presented a head-to-head confrontation between Hannoch for East Orange and Lasser for Livingston. Ordinarily, the weight to be accorded such expert testimony is a matter left to the reasonable judgment of the Division and its conclusions as to valuation will not be disturbed when found to be supported by substantial evidence. Passaic v. Gera Mills, 55 N.J. *114 Super. 73, 89 (App. Div. 1959), certification denied 30 N.J. 153 (1959). On appeal it our duty to review the evidence and render such decision as we deem proper in the light of that evidence, but not to disturb the judgment of the division unless the evidence is persuasive that it erred. Delaware, Lackawanna & Western R.R. Co. v. City of Hoboken, 10 N.J. 418, 426 (1952); Aetna Life Insurance Co. v. City of Newark, supra, at p. 104 (1952).
In substance, Livingston argues that in adopting outright the valuations testified to by Hannoch, and basing its judgment thereon, the Division was in error. We agree.
Hannoch's 1961 valuation was $44,895 less than his valuation (exclusive of the 35% "discount," see In re Appeal of East Orange, supra, 80 N.J. Super., at pp. 228-29) in the 1957 case  and this notwithstanding the fact that he had given no value to the Class 1 lands in 1957 whereas in 1961, pursuant to our holding in In re Appeal of East Orange, supra, he appraised them at $500 per acre for the 60.9 acres. Further, the Division's finding of true value here ($2,363,825) was $112,395 less than the value of $2,476,220 found by it for 1957 (or $72,395 less than such value as later corrected on appeal), and the assessment of $1,181,900 which is before us is $34,185 less than the assessment of $1,216,085 arrived at by us in the 1957 appeal. Significantly, Hannoch's values for the two years referred to were the same for the three largest classifications (2, 6 and 7), totalling 1,241.74 out of the 1,485.59 acres involved. As to the remainder, he reduced his per acre value for 92.9 acres of third class lands from $750 for 1957 to $500 for 1961 while increasing it for Classes 4 and 5, which totalled approximately 90 acres, by an average of $150 per acre.
The weight to be given to an expert's opinion of the value of land depends in great part upon the facts and reasoning which constitute the foundation for his opinion. Delaware, Lackawanna & Western R.R. Co. v. City of Hoboken, 16 N.J. Super. 543, 562 (App. Div. 1951), reversed on other grounds 10 N.J. 418 (1952). Our examination *115 of Hannoch's testimony satisfies us that his opinion of value was based upon an erroneous conception of his duty as a valuation expert. His primary concern, as gleaned from his testimony and the argument of counsel for East Orange at the trial, appears to have been to arrive at what he regarded as an equitable assessment for the water reserve rather than a determination of its true value in accordance with the statutory standards. He proceeded upon the theory that since there had been no official revaluation in Livingston since 1957, the assessments fixed for that year should govern unless there was some "change" in the property in issue. Notwithstanding the mandate contained in City of Newark v. West Milford and In re Appeal of East Orange, he disregarded or discounted the increased prices at which comparable properties were selling  prices which would have justified higher per acre values  because he considered that the increase in the value of lands comparable to the subject premises would affect marketable property only. He testified:
"The sales in the market actually don't influence the value of this property because it isn't capable of following the market * * *,"
and that:
"The subject property * * * could not enjoy an increase in value as related by these sales, [referring to sales cited by him] because of its more or less dedicated use as a water reserve * * *."
While conceding that there had been "recent" sales of land in Livingston at levels higher than were shown prior thereto, he averred that since the subject property was not on the market but was more or less dedicated to use as a water reserve, it could not enjoy any increase in value as evidenced by such sales. This was confirmed by his written report in which he stated:
"The subject land has a dedicated use which requires that it remain in its present raw state. As such it is not benefited by land *116 sales which may increase in value by reason of uses influenced by market conditions." (emphasis added)
And further:
"It should be restated in this report that the subject land of 1,500 acres reserved as it is for special use and kept out of the market can and, in our opinion, does make for higher prices of other lands in Livingston available for market sale. Such price increases cannot be applied to the subject land which is not available for market activity, and it should be noted that were 1,500 acres of land pressed into the market the price level of all lands in Livingston would drop sharply." (emphasis added)
Hannoch's approach to value violated the legislative mandate of N.J.S.A. 54:4-3.3 and the valuation tests laid down in City of Newark v. West Milford Township, supra, 9 N.J., at p. 308, and our decision in In re Appeal of East Orange, supra, 80 N.J. Super., at pp. 229, 230. Just as we held in the latter case that the fact that the property had potentiality for use as a water reserve called for no special increment to such valuation as might otherwise be arrived at, neither is its value to be depreciated because, by reason of its continued dedication to water supply purposes, its owner is not, in fact, in competition with other landowners for the increased prices being paid in the market place for comparable vacant lands.
Hannoch also disregarded a number of sales of nearby comparable property on the ground that these took place during the period of transition from raw unimproved land to lands covered by approved subdivision maps. The Division apparently agreed with this reasoning. However, Lasser testified that even after making an allowance for the factor of preliminary map approval, the prices realized gave unmistakable indication of a substantial upward trend in land values in the area during the period under comparison. The record supports Lasser's opinion.
We conclude that because based upon the complete acceptance of Hannoch's testimony, the conclusions of the Division are equally vulnerable. It follows that the judgment *117 fixing the assessment at $1,181,900, based upon a common level of 50%, for the year 1961 must be set aside.
While ordinarily it would be the better course to remand the matter to the Division for new findings as to value, Rek Investment Co. v. Newark, 80 N.J. Super. 552, 562 (App. Div. 1963), we deem it the better course here to make our own findings as authorized by R.R. 4:88-13. It is highly in the public interest that a final 1961 assessment should be fixed without the further delay which a remand, with the attendant possibility of a further appeal, would entail. Since the judge of the Division found, and we agree, that only the 1961 assessment was appealed to the Division, we are here concerned with that year only, although we are told that the parties have stipulated that the decision herein is to apply to the tax years 1962 and 1963 as well. In proceeding to our determination of value we are mindful that as a practical matter there must be stability in assessments and that values for purposes of taxation should possess a measure of permanency which render them secure against general temporary inflation or deflation. New Brunswick v. State of N.J. Div. of Tax Appeals, 39 N.J. 537, 541 (1963); Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 163 (1949).
We find and determine that the subject premises are located for the most part in Livingston's prime (R-1) residential zone, although a small portion, not more than 15 acres, is located in the R-2 zone and an even smaller portion in the R-3 zone (in the latter two zones smaller building lots are permitted). In the R-1 zone one-family residences, public buildings and public and institutional uses are authorized. Institutional uses are defined in the zoning ordinance as "churches, or other places of worship, schools teaching academic subjects, hospitals and other similar quasi public nonprofit uses." Thus, we are not restricted to residential property in our analysis of comparable sales but may consider sales for all permitted uses in arriving at our determination of true value.
*118 We find that between October 1, 1956 and October 1, 1960 the true value of available vacant land in Livingston has increased. This increase is demonstrated by a steady rise in the prices being paid for vacant lands available for development (under the existing code buildings may not be constructed on lands less than 176 feet above sea level). The increase in sales price has not been confined to lands which have had subdivision approval or whose sale has been contingent upon obtaining such approval, although these factors played a part in the comparatively higher prices brought by properties in those categories.
Coming to consideration of the true value of the lands in Classes 1 and 2, we note that both experts agreed upon a value of $500 per acre and we adopt that figure. Applying it to the admitted acreage yields a true value of $30,450 for Class 1 and $123,845 for Class 2.
As to the 92.9 acres comprising Class 3, we find Lasser's testimony to be more credible and fix the true value at $800 per acre or $74,320. As noted, Hannoch's 1957 value was $750 per acre.
Hannoch impliedly conceded that there had been an increase in the value of the 47.7 acres comprising Class 4. His 1961 figure was $1,200 per acre as compared with $1,000 in 1957. Lasser's figure was $1,500 per acre. We find the true value to be $1,200 per acre or $57,240. As to the 42.35 acres in Class 5, which are somewhat more desirable, we find the true value to be $1,800 or $76,230. We note here that Hannoch's opinion of value also represented an increase over his figure for 1957.
The remaining area, consisting of Classes 6 and 7, totals 994.05 acres located at elevations which exceed 185 feet. We find and determine that the true value of the wooded portion thereof totalling 894.05 acres, is $2,400 per acre or a total of $2,145,720. Since both experts conceded that the remaining 100 acres have an additional value of $500 per acre by virtue of their being cleared, we fix the true value *119 thereof at $2,900 per acre or a total of $290,000. Thus we find the total true value of the subject lands to be $2,797,805.
Remaining to be determined is the ratio to be applied to the foregoing true value in order to bring it to the same standard of value as other property in the township. It is clear that assessments, at least in the case of vacant lands, have not kept pace with true values. As noted, East Orange contended in its petition of appeal that the ratio of assessment to true value of 44.84 represented the common level. However, at the oral argument counsel for the parties agreed upon a ratio representing the average of those set forth in the Tables of Equalized Valuations promulgated by the Director of the Division of Taxation on October 1 of 1961, 1962 and 1963. We find this to be 44.38. Applying it to the true value of $2,797,805, we fix the assessment for the year 1961 at $1,241,665.
By reason of the foregoing, we find it unnecessary to pass upon the remaining contentions raised.
The judgment of the Division is accordingly reversed and the case remanded for the entry of judgment fixing the assessment for the year 1961 at $1,241,665.