ANDREW, J. T. C.
The issue involved in this local property tax matter is the value of 34 vacant lots, aggregating approximately 120 acres, located along or near the bank of the Raritan River in Edison Township, New Jersey. The property in question consists of separately assessed lots, some of which are contiguous. All of the lots are located in Blocks 399 and 400 as designated on the tax map of Edison Township. The 34 parcels are all within the delineated flood hazard area as designated by the Department of Environmental Protection pursuant to N.J.S.A. 58:16A-50. The statute breaks down flood hazard area into floodway and flood fringe.[1] Some of these parcels are in the floodway, some are in the flood fringe, and some are partly in floodway and partly in flood fringe.
The various block and lot designations, assessments and actions of the Middlesex County Board of Taxation for the tax year of 1976 are included in the file of this action and are on a document designated as Exhibit A.
Taxpayer’s expert characterized the subject lots as inaccessible and landlocked salt marshland, the nearest public road being a quarter of a mile away. His testimony on the question of inaccessibility was somewhat vague and incomplete. He indicated that Block 400, Lots 37 and 63 were accessible by virtue of their contiguity with property that is owned by other corporate entities controlled by the same interests that control plaintiff. It can be noted that there is access to some of the lots by means of Block 400, Lot 63.
*80 Plaintiff’s expert did not utilize any of the standard approaches to value. Apparently, he did not use the only suitable approach for this type of property, the market data or direct sales comparison approach, because he could not find any sales of comparable properties even though he made what he considered to be an extensive search. It was his opinion that the 34 lots had no utility and since value exists only in relation to utility, the lots had only a nominal value. He relied upon textual material found in The Appraisal of Real Estate, American Institute of Real Estate Appraisers (6th ed. 1973) at 21-22 for the principle which he espoused.
He based his determination of inutility on unsuitability of the topography for building purposes and the lands’ inaccessibility. He further testified that after investigation, he discovered that no one was interested in any of the parcels for wildlife or game preserve purposes which confirmed his opinion that the parcels had only nominal value.[2]
Upon cross-examination, the taxpayer’s expert observed that if the lots were accessible then the value of those lots upon which improvements could be constructed would have to be estimated after engineering studies, related to the amount of fill and pilings required, were conducted. He did not have such information, therefore, he could not make a judgment as to value regarding any accessible buildable lot. He observed that it was preposterous to assume that any of the subject could be filled from an economic point of view.
Taxpayer’s expert indicated that all of the subject properties were within the flood hazard zone, some lots totally within floodway, some totally in flood fringe and some partially located in both areas. He obtained this information from maps on file in Edison which permitted him to determine the floodway and flood fringe areas as of the assessment date, October 1, 1975. *81 He concluded his testimony with a nominal value estimate of $200 an acre for all 120 acres.
Edison’s expert agreed with taxpayer’s characterization of the lots being primarily marshland in a flood hazard area. He also agreed that the subject parcels lacked accessibility to public roads. However, it was his opinion that the value of the various parcels was $3,000 an acre which he derived from two sales.
The first sale was the sale of the subject parcels on March 14, 1969 to the plaintiff for a total cost of $526,500 or approximately $4,400 an acre. The record indicates that plaintiff’s purpose in acquiring the property was for use as a landfill which could not come to fruition because of the enactment, subsequent to the purchase, of N.J.S.A. 58:16A-50 et seq. and the regulations promulgated by the Department of Environmental Protection which prohibited the dumping of solid waste in floodways. N.J.A.C. 7:13-1.4(b).
The second sale related by the expert was of a parcel located east of the subject area and also in close proximity to the Raritan River. This sale took place on June 2, 1967. The consideration of $158,300 for 15.83 acres reflected a price of $10,000 an acre. Edison’s expert indicated that this comparable land was filled and an industrial improvement was constructed upon it in 1969 or 1970. He adjusted the indicated value of the comparable at $10,000 an acre to $3,000 an acre for the subject. This downward adjustment was based on the regulations adopted by the Department of Environmental Protection concerning use and construction subsequent to the sale, the superior access and smaller size of the comparable sale property along with the fact that the subject of the comparable sale was one integrated parcel.
The subject parcels are all located in the heavy industrial district. In accordance with Edison’s zoning ordinance most industrial manufacturing uses are allowed. However, this court cannot ignore the impact of regulations issued pursuant to the “Flood Hazard Area Control Act” on the use and hence value of lands designated as floodway or flood fringe areas. N.J.S.A. *82 58:16A-61; Cappture Realty Corp. v. Elmwood Park, 126 N.J. Super. 200, 313 A.2d 624 (Law Div.1973), aff’d 133 N.J.Super. 216, 336 A.2d 30 (App.Div.1975); N. J. Bldrs. v. Dept. of Environmental Protection, 169 N.J.Super. 76, 404 A.2d 320 (App.Div. 1979).
Under the authority of the provisions of N.J.S.A. 58:16A-50 et seq., the Department ■ of Environmental Protection was given the power to delineate flood hazard areas and to adopt rules regulating the development and use of such areas. Much of the subject property is situate in the flood way area of the Raritan River while the balance is located in the flood fringe area.
Pertinent regulations prohibit the use of property located in the floodway for all purposes otherwise permitted by Edison’s zoning ordinance. N.J.S.A. 7:13-1.4. As of the relevant assessing date, October 1,1975, structures could be erected within the high water mark of any stream (flood fringe areas) but the owner had to first give notice to the Division of Water Policy and Supply and comply with such conditions as were prescribed by the Division. N.J.S.A. 58:l-26.[3]
The impact of the flood hazard regulations, N.J.A.C. 7:13-1.1, on the land in the floodway makes it useless for all practical purposes. Accordingly, this court cannot accept as comparable to the land lying in the floodway those sales which occurred prior to the imposition of the restrictions found in N.J.A.C. 7:13-1.1 et seq. I am constrained to find that the plaintiff’s property within the floodway has only a minimal or nominal value. As previously noted above, I cannot ignore the impact of flood hazard regulations on the value of lands designated as floodway. I, therefore, find that the value of those lots which lie entirely in the floodway is $200 an acre.
*83 The portion of the subject which is in the flood fringe area, however, is not subject to the restrictions found in N.J. A.G. 7:13-1.1 et seq. which render lands situated in the floodway virtually without entrepreneurial utility. On October 1, 1975, that portion of the subject which was located in the flood fringe area was available for building and other uses provided that application was made to and the conditions prescribed by the Division of Water Policy and Supply were satisfied. Therefore, these flood fringe lands cannot be characterized as totally useless or lacking utility and having a nominal value only.
The court finds that it must reject the testimony of both experts as to the value of the land in the flood fringe area. It is not only the right but the duty of the Tax Court to apply its own judgment to the proffered valuation data in order to arrive at true value provided there is enough substantial and competent evidence to enable the trier of the facts to ascertain and determine true value. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965). The expert for the taxpayer found both the land in the floodway and the flood fringe to have only a nominal value, notwithstanding the different treatment accorded these lands by the pertinent legislation and regulations. It was his opinion that the entire subject was nonbuildable and nonusable unless it was filled. He did not, however, give any indication of the cost of filling and the effect those costs would have on the value of the subject lots situate in the flood fringe area, other than to state that it was preposterous to assume that any of the subject lots could be filled from a practical point of view. He, also, did not differentiate in his testimony the value to be ascribed to those parcels which were inaccessible by public road and those lots to which the taxpayer had access by virtue of the ownership of a parcel which is contiguous to some of the lots which comprise the subject of this litigation by the same interests which own the subject. The weight to be given the opinion of an expert depends upon the facts and reasoning which form the basis of his opinion. Passaic v. Gera Mills, 55 N.J.Super. 73, 89-90, 150 A.2d 78 (App.Div. 1959), certif. den., 30 N.J. 153, 152 A.2d 171 (1959); In re Appeal *84 of the City of East Orange, 103 N.J.Super. 109, 246 A.2d 722 (App.Div.1968).
The expert for the taxing district predicated his opinion as to the value of the subject on two comparable sales. These sales do not reflect the influence of the applicable regulations, which became effective subsequent to the two sales but prior to the relevant assessing date herein. The two sales do not account for the impact of the regulations on the value of the subject property. As did the expert for the taxpayer, the expert for the taxing district did not indicate in his testimony or in his valuation of $3,000 an acre, the varying impact the relevant legislation and regulations have on the floodway and flood fringe areas. He did state that the change in the regulations, the superior access and the size of the comparable were factors which caused him to arrive at his final estimate of value. The factors cited support a downward adjustment of the sales price. However, there is no support for the specific adjustment to $3,000 an acre. Absent adequate support, the opinion of Edison’s expert does not merit substantial consideration. Passaic v. Gera Mills, supra; In re Appeal of East Orange, supra.
As previously stated, I find that I cannot accept the opinion of either expert as providing a correct estimate of the value of the property within the flood fringe area nor can I make adjustments to the valuation data submitted to determine value as directed in Samuel Hird & Sons, Inc. v. Garfield, supra.
The onus is on the taxpayer in this matter to establish a true value at variance with the judgment of the Middlesex County Board of Taxation. I find that plaintiff has failed to establish by a fair preponderance that the subject parcels located in the flood fringe area have only a nominal value. I am constrained to affirm the judgments of the county board as to all of those lots which are situate in the flood fringe area. There being no factual basis in the record upon which the court can determine the acreage within the floodway and flood fringe areas of those lots which are in both the floodway and flood fringe area, I must affirm the judgment of the county board as *85 to these parcels, also, for failure to overcome the burden of nonpersuasion. Glenwood Realty Co., Inc. v. East Orange, 78 N.J.Super. 67, 187 A.2d 602 (App.Div.1963).
Therefore, I find and determine that the value of those lots totally within the floodway is $200 per acre and I affirm the judgment of the county board as to those parcels located totally or partially within the flood fringe area. The Clerk of the Tax Court is directed to enter judgments in accordance with a schedule which is part of the file and designated as Exhibit A.

“Flood Hazard Area” is defined in N.J.S.A. 58:16A -51 as the floodway and the flood fringe area. “Floodway” is the channel of a natural stream and portions of the flood hazard area adjoining the channel which are reasonably required to carry and discharge the flood water or flood flow of any natural stream. “Flood fringe area” is that portion of the flood hazard area not delineated as the floodway.

There are nonregulated uses which operate as exceptions to N.J.A.C. 7:13-1.4(b). These include, among others, wildlife and nature preserves, parks, game farms, shooting preserves and some agricultural uses. N.J.A.C. 7:13-1.5(b).

N.J.S.A. 58:1-26 was amended by L.1975, c. 232, § 9 to require the application to and approval of the Department of Environmental Protection for the construction of any structure or alteration within the mean high water mark. N.J.S.A. 58:1-26 was repealed, effective January 31, 1980, by L.1979, c. 359, § 15. The substance of N.J.S.A. 58:1-26 is now provided in N.J.S.A. 58:16A-52, -55, -55.2, -55.3.