KAHN, J.T.C.
Taxpayer appeals the 1983 assessment on its property located on Paterson Plank Road in the Borough of Carlstadt, and known more particularly as Block 124, lots 1, 2, 3, 4 and 5. The assessments, affirmed by the Bergen County Tax Board, are as follows:
Lots 1,2,3,4 Lot 5 Total
Land $311,400 $343,800 $655,200
Improvements $ 48,000 $----- $ 48,000
Total $359,400 $343,800 $703,200
The parties have stipulated an assessment for improvements of $20,000, leaving for determination the true value for land.
The property, comprising 5.938 acres, is located in a heavy industrial area. There is some disagreement as to the zoning of the subject, but I find that the zoning requirements of the Hackensack Meadowlands Development Commission (H.M.D.C.) supersede any zoning ordinance of the Borough of Carlstadt. Meadowlands Reg. Development Agency v. State, 63 N.J. 35, 46, 304 A.2d 545 (1973); N.J.S.A. 13:17-6(i), -6(k). The zoning requirements permit both industrial and office use, and as special exceptions, hotels, motels, restaurants and retail use. The evidence demonstrates that the highest and best use of the property is its current use as an industrial facility.
*485 As of October 1, 1982, the relevant assessment date, the subject site contained approximately 60 storage tanks and tank wagons containing various substances, including, but not limited to, oils, sludge, crude thinner, methanol/water, solvents and paint residues. These containers were left on the site by a prior tenant. Taxpayer contends that the materials stored in these containers leaked therefrom, causing significant damage to the realty and reducing its true value.
Both parties relied upon the testimony of experts, while taxpayer also presented two fact witnesses. The experts each relied exclusively upon the market sales approach to valuation.
Taxpayer’s expert relied upon the sales of seven properties, all of which were located in Carlstadt. The prices of the comparables ranged from $80,000 to $213,000 an acre, while the sizes ranged from 1 to 167s acres. The dates of the sales were all within IV2 years before or after the assessment date. He made adjustments to the sales, arriving at a value for the subject property of $125,000 an acre or a total of $742,250, but did not make any specific calculations in doing so. He stated only that he gave greater weight to those comparables more similar to the subject property and made adjustments accordingly.
The witness opined that the market value of the land after removal of the toxic waste was $742,250. He concluded that the value would have been higher had the property never had a toxic waste problem; in other words, the property forever remained “tainted” for having had toxic waste, even after its removal. In arriving at his conclusion of value, he did not value the land as if untainted and then deduct some factor for the stigma of contamination. Instead he relied on a general, overall valuation for land with no separate calculation for the stigma of contamination.
Taxpayer’s expert reduced the $742,250 value by what he termed the “cost to cure.” He stated that he was informed by taxpayer that the clean-up costs were $450,000. This figure *486 was deducted from $742,250 to arrive at a true value of $292,250.
Taxpayer’s fact witnesses were an assistant engineer with the Hackensack Meadowlands Development Commission and one of taxpayer’s officers. The engineer offered corroborative evidence that the land was contaminated in 1983. He also testified that before any requirement of clean-up would be issued by the Hackensack Meadowlands Development Commission, taxpayer would be required to undertake a feasibility study to be reviewed by the commission. No study was undertaken for this purpose as of the assessment date, nor could the witness estimate either the cost of the study or the anticipated remedial measures as of that time.
Taxpayer’s other fact witness, one of its officers, testified that the Department of Environmental Protection (DEP) of the State of New Jersey filed suit against taxpayer on May 5, 1983. The suit resulted in an order, dated June 16, 1983, placing the property under the custodial care of the DEP and empowering the DEP to require taxpayer to undertake remedial action. The testimony suggests that responsibility for the clean-up was placed on the individual principals of the corporation as well as the corporation itself. The witness further stated that in response to this litigation taxpayer contracted in August 1984 to have the toxic waste removed from the property. The contract provided for labor and material costs; removal, transportation and disposal of liquid waste; laboratory work and an analysis of P.C.B.’s as requested by the DEP. The total cost of the work was $450,000, which when deducted from the true value resulted in a net value of $292,500.
Taxpayer further urges that federal and State of New Jersey statutes require extensive expenses and impose personal liability on the owners of contaminated properties, thus rendering the subject property unsalable as of the assessment date.
Taxpayer’s expert, although duly qualified, admitted inexperience in appraising property in the Meadowlands and dealing with H.M.D.C. zoning regulations.
*487 The municipality relied on the testimony of its expert. He utilized the market sales approach based on three comparables, two located in Carlstadt and one in Moonachie. He made specific adjustments for size, location and date of sale based on his experience in valuing real estate in Carlstadt and other municipalities within the Hackensack Meadowlands area. He estimated a value for the subject property of $23,500 an acre for the acre located within the water course of the Peach Island Creek and $235,000 an acre for the other 4.938 acres. The total unadjusted land value of $1,160,640 was reduced by a 20% reclamation factor, leaving an adjusted value of $952,012. A summary of the adjustments and allocations follows:
4.938 acres, uplands at $235,000 $1,160,640.00
1.000 acres, lowlands at $23,500 $ 23,500.00
Total Value, lowlands & uplands $1,184,140.00
Less cost to reclaim at 20% $ 232,128.00
Depreciated value of land $ 952,012.00
The depreciated value of the land was then allocated to the lots in proportion to their respective shares of the total acreage. He allocated $456,400 to lots 1, 2, 3 and 4, which comprised 2.838 acres or 47.7939% of the total acreage. The remainder, $497,000, was allocated to lot 5, which comprised 3.1 acres or 52.2061% of the total.
Both parties acknowledge the presence of toxic waste on the subject site as of the assessment date. Both appraisers also acknowledge that the subject site would be difficult, if not impossible, to sell as of the assessment date, but each ascribes a market value for the purpose of assessment.
The taxpayer has a dual burden of proof. He must first overcome the presumption of correctness which attaches to the judgment of the County Board of Taxation. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952). Once this hurdle has been cleared, i.e., the presumption in favor of the County Board judgment has been met then the Tax Court should *488 appraise the testimony from both parties and determine the true value of the subject property and its appropriate assessment using the preponderance of the evidence as the standard of proof. Trap Rock Industries, Inc. v. Franklin Tp., 4 N.J.Tax 445, 451 (Tax Ct.1981), aff’d 4 N.J.Tax 456 (App.Div.1982). The Tax Court should consider the data submitted and determine whether sufficient evidence exists to determine true value, and, if such is the case, what that true value is. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965); Filcrest Realty, Inc. v. Edison Tp., 2 N.J.Tax 77 (Tax Ct.1980).
The taxing district’s expert conducted a study of allegedly comparable sales in attempting to derive true value. In so doing, he made specific adjustments to the comparables to make them more like the subject site. In commenting on the problems of making adjustments, the court in Schmertz v. Dover Tp., 4 N.J.Tax 145 (Tax Ct.1982), stated:
One of the pitfalls frequently encountered by the appraisers “is the problem of support, justification, and documentation of the adjustments used in the Direct Sales Comparison Approach”. Terry, “Support and Justify: An Associate’s Problem”, The Real Estate Appraiser and Analyst (September-October 1978), at 28. Adjustments, if they are to be of use to the court in determining value, must be supported and justified. In order to make proper adjustments, the appraiser is required to “go into the market and get the data”. Ibid. The plaintiff’s appraiser did not “get the data” to support, justify and document his adjustments. An appraiser should “not make adjustments for the sake of an adjustment____ [Appraisers, are interpreters of the market, [t]hey do not make the market.” Id. at 31. [At 150]
The expert gave no justification for his adjustments other than to base them on his general experience. He also failed to make any adjustment for the presence of toxic waste, despite his own admission that toxic waste had made the property virtually unsalable. Similarly, none of his comparables were affected by toxic waste. “It is fundamental that evidence of sales of comparable property is helpful in the search for true value only where there is a substantial similarity between the properties so as to admit of reasonable comparison.” Inmar Associates, Inc. v. Edison Tp., 2 N.J.Tax 59, 66 (Tax Ct.1980). Where such vastly different properties are used *489 as comparables, with no effort at adjustment to account for the differences, no reasonable comparison can be made. The municipality has therefore failed to establish true value by a preponderance of evidence.
Taxpayer’s expert was likewise unable to find comparable sales involving property tainted by toxic waste. He attempted to account for the presence of toxic waste by finding the true value for the subject property as if the toxic waste had already been removed and then deducting from this the cost to remove it.
In initially establishing true value the expert used several comparables. He made various adjustments to these properties to make them more comparable to the subject site. However, he also stated that he took into consideration a “taint” on the subject property that would remain even after the toxic waste was removed. He placed no dollar value on this taint, nor did he value the property as if it had never been tainted. None of the comparables utilized had a similar taint. The expert based his valuation only on a general feeling that the subject would be worth somewhat less having had toxic waste than if it had never had it.
I must reject this initial valuation as unsupported by the facts. The weight to be given an expert’s opinion depends on the facts and reasoning upon which it is based. Passaic v. Gera Mills, 55 N.J.Super. 73, 150 A.2d 67 (App.Div.1959). In this case neither the facts nor the reasoning are persuasive.
Assuming arguendo that some initial true value could be established, I nonetheless reject taxpayer’s attempt to adjust true value to reflect the presence of toxic waste and the cost to remove it. Taxpayer deducts $450,000 as the clean-up cost, this being the cost taken from a contract between the taxpayer and a contractor in August 1984. This contract resulted from litigation instituted in May 1983.
*490 Taxpayer has failed to demonstrate that the lawsuit or its outcome was foreseeable as of the assessment date. Valuation should be based on facts and circumstances known or knowable as of the assessment date, unaided by hindsight. New Brunswick v. Tax Appeals Div., 39 N.J. 537, 189 A.2d 702 (1963). Taxpayer contends that the toxic waste was on the premises on the assessment date and that its presence, combined with the various governmental regulations, put a prospective purchaser on notice that costs would have to be incurred to clean the site. However, taxpayer presented no independent evidence of the cost as of the assessment date. His cost estimate as of the assessment date is, therefore, unreliable.
 Finally, I find taxpayer’s contention that governmental regulations have rendered the premises worthless to be unpersuasive. The value of property can be affected adversely by governmental regulations. Inmar Associates, Inc. v. Edison Tp. supra, 2 N.J.Tax at 65. However, the best evidence suggests that the property has some value above the cost to cure. This evidence is insufficient, however, to determine the true value.
I find that neither party has established the true value by a preponderance of the evidence. I, therefore, affirm the assessment for land, as affirmed by the county board of taxation, and find the assessment for improvements to be as stipulated. The Clerk of the Tax Court is directed to enter judgment as follows:
Lots 1,2,3,4 Lot 5 Total
Land $311,400 $343,800 $655,200
Improvements $ 20,000 $----- $ 20,000
Total $331,400 $343,800 $675,200